**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 94-20759**

---

**PAMELA LYNN PERILLO,**

**Petitioner-Appellant,**

**VERSUS**

**GARY L. JOHNSON, Director, Texas Department**
**of Criminal Justice, Institutional Division,**

**Respondent-Appellee.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

March 21, 1996

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Pam Perillo was found guilty of murder and sentenced to death by a Texas court. She filed a federal petition for writ of habeas corpus, 28 U.S.C. § 2254, asserting that her conviction was wrongful because her attorney was simultaneously representing a key prosecution witness.[1] The federal district court refused to allow any discovery or an evidentiary hearing and granted summary judgment denying the writ. Perillo now appeals the dismissal of her habeas corpus petition. Finding that the district court erred in refusing to allow discovery and to hold an evidentiary hearing, we

---

[1] Perillo raised many other issues below. However, she briefed only the ineffective assistance of counsel issue. She attempted to incorporate by reference her district court habeas corpus petition. This is insufficient to preserve error. Therefore, all other issues are waived on appeal. *Yohey v. Collins*, 985 F.2d 222, 224-45 (5th Cir. 1993).

reverse the judgment of the district court and remand the case for appropriate discovery and an evidentiary hearing.

## I. BACKGROUND

Perillo was initially convicted of capital murder and sentenced to death in 1981 for her part in the murders of Robert Banks and Bob Skeens. After that conviction was reversed due to an error during voir dire, *Perillo v. State*, 656 S.W.2d 78 (Tex. Crim. App. 1983), she was convicted a second time in 1984 and again sentenced to death.[2] Two other people, Linda Fletcher and Mike Briddle, were also involved in the same murders. Fletcher was initially charged with capital murder for killing Banks and Skeens. However, the state later lowered the charge to aggravated robbery. Fletcher was convicted of aggravated robbery and sentenced to five years probation; she has never been tried for the murders of Banks or Skeens. Briddle was convicted of capital murder and sentenced to death. He has since been executed by the State of Texas.

Jim Skelton was Perillo's attorney during her second trial.[3] Skelton had also been Fletcher's attorney in 1980 when she was indicted for the capital murder of Banks and Skeens, and he continued to represent her during her trial for aggravated robbery. When Fletcher later testified against Briddle at his trial, Skelton, as her attorney, negotiated "use immunity" for her, which meant that nothing she said during her testimony in the Briddle trial could be used against her. *Ex Parte Shorthouse*, 640 S.W.2d 924, 928 (Tex. Crim. App. 1982). The state, however, was free to try her using information it already possessed.

On October 19, 1984, the judge in Perillo's case issued a subpoena to compel Fletcher, who was living in California, to return to Texas and testify in Perillo's second capital murder trial. Fletcher

---

[2] While the crime resulted in the death of two men, Robert Banks and Bob Skeens, Perillo was only tried and convicted for the murder of Skeens. A detailed statement of the facts in this case is found in the Texas Court of Criminal Appeals decision affirming Perillo's Texas conviction. *Perillo v. State*, 758 S.W.2d 567 (Tex. Crim. App. 1988), *cert. denied*, 492 U.S. 925 (1989).

[3] Robert Pelton was originally appointed to represent Perillo at her second trial. Skelton was appointed as Pelton's co-counsel in November 1983, because he was familiar with the facts of the case through representing Fletcher. Perillo's counsel at her first trial was William Burge; Skelton had no involvement in that first trial and Fletcher did not testify.

would not voluntarily return to Texas, so a hearing was set in California to determine whether Fletcher would be forced to return. Fletcher called Skelton and asked him to come to California. On November 5, 1984, the first day of testimony in Perillo's case, Skelton traveled to California to represent Fletcher in her attempt to avoid the subpoena.

The record is silent as to what happened in California. The only thing we know for certain is that after Skelton flew to California to represent Fletcher, she was granted transactional immunity for the murders of Skeens and Banks and she returned to Texas to testify. This means that she can never be prosecuted for their murders. *Shorthouse*, 640 S.W.2d at 928. After she was granted transactional immunity, the California court order Fletcher to return to Texas to testify against Perillo. Perillo was convicted and sentenced to death.

## II. THE NEED FOR DISCOVERY AND EVIDENTIARY HEARING

### A. Discovery and Evidentiary Hearing

When there is a "factual dispute, [that,] if resolved in the petitioner's favor, would entitle [her] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing," a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing. *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1257 (1995); *see Young v. Herring*, 938 F.2d 543, 560 (5th Cir. 1991), *cert. denied*, 503 U.S. 940 (1992); Rule 6 of the Rules Governing § 2254. However, the discovery and evidentiary hearing are limited to the factual dispute; we have made clear that Rule 6 "does not authorize fishing expeditions." *Ward*, 21 F.3d at 1367. A habeas petitioner must make specific allegations; "conclusory allegations unsupported by specifics," or "contentions that in the face of the record are wholly incredible" will not entitle one to discovery or a hearing. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977).

Perillo sought both discovery and an evidentiary hearing during her federal habeas corpus proceeding, but both were denied. The district court erred because Perillo alleged that Skelton was representing Fletcher in California, creating an actual conflict of interest that adversely affected his representation of her. As discussed below, this is a factual dispute which, if resolved in her favor,

3

would entitle her to relief and there are no state factfindings on the issue that are entitled to the presumption of correctness.

In her habeas corpus petition, Perillo alleges that "Skelton represented Fletcher in California in a hearing to resist the State's subpoena for Fletcher to testify at Ms. Perillo's trial as the chief prosecution witness. Later, **during Ms. Perillo's trial**, Skelton flew to California to explain to Fletcher the legal proceedings in which she would testify against Ms. Perillo." (emphasis in original).

In addition, Perillo provided an affidavit from Carolyn Clause Garcia (then an attorney in private practice in Houston) who stated that "[d]uring the pendency of the second Perillo trial, Jim Skelton flew to California to represent Linda Fletcher in matters regarding the State's subpoena for [Fletcher's] appearance and testimony. I thought it odd and an additional conflict of interest for [Skelton] to be involved in the representation of Fletcher in any fashion under the circumstances."

Skelton himself admits that he represented Fletcher at her hearing in California. He stated in his first affidavit that he "represented Ms. Fletcher . . . in the California hearing to resist the Texas subpoena for Ms. Fletcher to testify against Ms. Perillo." Contrary to the State's assertions, Skelton never withdrew or corrected his statement that he represented Fletcher in California.

The period of time when Skelton was in California is a black-hole; we have no information about what happened at the hearing. There is no evidence of who negotiated the immunity for Fletcher and exactly what role, if any, Skelton had in the hearing. There is no transcript from the California hearing. The evidence is limited to (1) Skelton's affidavits in the state habeas proceeding, none of which squarely address the issue of his conduct in California, and (2) his statement at trial that he went to California at Fletcher's request. Perillo has not had the opportunity to depose or cross-examine Skelton. Perillo has not been able to depose or cross-examine Fletcher. Perillo has not even been able to get Fletcher's affidavit. We find it disturbing that Perillo's chief obstacle in obtaining information from Fletcher is her own trial counsel, Skelton.[4] When Perillo's habeas counsel

---

[4] Perhaps Skelton's actions in the habeas proceeding should not be surprising, given the tone of his affidavits. Rather than merely denying that he labored under a conflict, Skelton instead chose

4

sought information from Fletcher in 1992, they were informed that Skelton was representing her and that all communications must be through him. Despite repeated requests, no meeting was ever allowed and Perillo's counsel have never interviewed Fletcher. Therefore, Perillo has brought forth, as best she can, facts supporting her allegation that Skelton had a conflict of interest that adversely affected her.

Perillo is entitled to an evidentiary hearing where she can examine Skelton and Fletcher and find out what happened in California. This should not be a wide-ranging fishing expedition, but a brief adversarial hearing concerning a discrete time period.[5] We express no view on what conclusion should be reached once such a hearing is held.

## B. Presumption of Correctness

When a state court has made findings of fact after a full and fair hearing, federal habeas corpus courts grant those factfindings a presumption of correctness and do not relitigate those facts. 28 U.S.C. § 2254. However, not all items contained in the findings of fact are questions of fact entitled to the presumption of correctness. Certain issues, including determinations about the effectiveness of counsel's assistance, involve mixed questions of law and fact, and are reviewed *de novo*. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990). However, even if an issue is a mixed question of law and fact, state court background factfindings are subject to the deference requirement of § 2254(d). *Carter*, 918 F.2d at 1202. *See Strickland v. Washington*, 466 U.S. 668, 698 (1984); *Loyd v. Smith*, 899 F.2d 1416, 1425 (5th Cir. 1990). Of

---

to mock Perillo's habeas case, saying:

> Had we done what Perillo suggests and succeeded in convincing the jury that Linda was a lying California bitch who tugged on the rope with Perillo, this would not have helped with the major stumbling block in Perillo's case -- her confession.

[5] While the evidentiary hearing and discovery will be limited, we think that it will be helpful if the parties also explore whether Fletcher gave any confidential information to Skelton when he represented her.

course, if the state habeas court did not make factfindings on an issue, the federal habeas court is free to examine the issue unconstrained. *Armstead*, 37 F.3d 202, 209 (5th Cir. 1994), *cert. denied*, 155 S.Ct. 1709 (1995).

The state habeas corpus court found that there was "no conflict between Skelton and Perillo and no adverse effect upon Perillo's case." Those findings are mixed questions of law and fact; therefore, they are subject to *de novo* review and are not entitled to any presumption of correctness. The state habeas corpus court did not make any background findings about what happened in California and Skelton's involvement, if any, in that hearing.[6] Therefore, on this issue, there are no factfindings entitled to a presumption of correctness.

Moreover, even if there had been state court factfindings on this issue, they would not be entitled to the presumption of correctness. State court habeas factfindings are presumed correct only when there has been a full and fair hearing. 28 U.S.C. § 2254(d); *Armstead*, 37 F.3d at 207. A full and fair hearing does not necessarily mean a live hearing. In the proper circumstances, we have

---

[6] The state habeas court did not actually make specific background findings concerning Skelton's representation. Instead, the court merely recited the facts that the Court of Criminal Appeals considered in making its finding of no conflict or adverse effect. The habeas court said the Court of Criminal Appeals considered,

> Skelton's prior representation of Linda Fletcher; the lack of any attorney client relationship between her and Skelton at the time she testified; the fact that Fletcher at the time of her testimony had other, independent counsel advising her; the personal friendship which had developed between Fletcher and Skelton, including the fact that Skelton had flown to California to attend her wedding.

To the extent that these can be considered implicit background factfindings, they do not address the issue of Skelton's representation of Fletcher in California when Perillo's trial was in progress, or his failure to aggressively cross-examine Fletcher at trial, the importance of which we discuss in Part III(B)(2).

It is possible that the Court of Criminal Appeals factfindings on direct appeal can qualify as § 2254(d) findings of fact. *May*, 955 F.2d at 312. However, the Texas Court of Criminal Appeals did not make specific findings regarding Skelton's conduct in California. The only findings relevant to the conflict of interest issue is the Court of Criminal Appeals' finding of no actual conflict and no adverse effect. But, as discussed earlier, these are mixed questions of law and fact, which are reviewed *de novo* and are not entitled to the presumption of correctness. *Koch*, 907 F.2d at 527.

afforded the presumption of correctness to "paper hearings."[7] *Id*. at 207. However, "it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual dispute underlying the petitioner's claim." *May v. Collins*, 955 F.2d 299, 312 (5th Cir. 1992).

In *Nethery v. Collins*, 993 F.2d 1154, 1157 n.8 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1416 (1994), we held that, because the state habeas judge was not the judge at the state trial, the paper hearing was not an adequate and fair hearing. In *Armstead*, we found that a paper hearing was adequate because, "[u]nlike the scenario in *Nethery*, the trial judge in Armstead's case who made the factual finding with regard to the conflicting affidavits via the 'paper hearing' was the same judge who presided over Armstead's guilty plea. The judge had the opportunity to fully assess Armstead during his plea process and determine his credibility then." *Armstead*, 37 F.3d at 208. *See Vuong v. Scott*, 62 F.3d 673, 683-84 (5th Cir.) (same judge -- paper hearing accorded presumption of correctness), *cert. denied*, 116 S. Ct. 557 (1995); *Amos v. Scott*, 61 F.3d 333, 347 (5th Cir.) (same judge -- paper hearing accorded presumption of correctness), *cert. denied*, 116 S. Ct. 557 (1995); *Sawyers v. Collins*, 986 F.2d 1493, 1505 (5th Cir.) (same judge -- paper hearing accorded presumption of correctness), *cert. denied*, 113 S. Ct. 2405 (1993).

In the instant case, the judges were different. The judge in Perillo's second capital murder trial was the Honorable Woody Densen, while the state habeas corpus judge was the Honorable Curt F. Steib. Judge Steib conducted only a paper hearing in the habeas corpus proceeding. Because the judge in the state habeas corpus proceeding was not the trial judge, he could not "compare the information presented in the various affidavits against his own firsthand knowledge of the trial." *May*, 955 F.2d at 314. We do not suggest that a full and fair hearing cannot be had any time the state habeas judge is different from the trial judge. In our case-by-case review, the identity of the judges is but one factor to consider, as we explained in *Nethery*, 993 F.2d at 1157 n.8. In this case, Judge Steib could not supplement the affidavits with his own recollection of the trial and Skelton's

---

[7] Paper hearings are hearings where the state judge did not hear live testimony, but instead relied on affidavits.

performance in it. Thus, there is a danger of "trial by affidavit." ***Amos***, 61 F.3d at 347. Therefore, the findings of fact in the state habeas corpus proceeding are not entitled to the § 2254(d) presumption of correctness.

### III. CONFLICTS OF INTEREST

To determine whether Perillo is entitled to an evidentiary hearing, we must also determine whether her claim that she received ineffective assistance of counsel, if true, would entitle her to relief. ***Ward***, 21 F.3d at 1367.

The Sixth Amendment guarantees a defendant the right to counsel. This right includes the right to an attorney who is not "burdened by an actual conflict of interest." ***Strickland v. Washington***, 466 U.S. 668, 692 (1984). Normally, to prove ineffective assistance of counsel, a petitioner must prove (1) that his attorney's representation fell below an objective standard of reasonableness and (2) that he was prejudiced. ***Id***. at 687; ***Beets v. Scott***, 65 F.3d 1258, 1272-73 (5th Cir. 1995) (*en banc*), *petition for cert. filed* (Dec. 18, 1995) (No. 95-7279). In order to prove that he was prejudiced, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland***, 466 U.S. at 694. This is known as the ***Strickland*** standard.

We apply a different standard, however, in cases where an attorney's representation of multiple clients created a conflict of interest. Instead of ***Strickland***, we apply the more lenient ***Cuyler*** standard. ***Cuyler v. Sullivan***, 446 U.S. 335 (1980); ***Beets*** at 1265. To prevail on a ***Cuyler*** claim, a petitioner need only show that his attorney labored under an actual conflict which adversely affected his lawyer's performance. ***Cuyler***, 446 U.S. at 348; ***Beets***, 65 F.3d at 1277; ***Nealy v. Cabana***, 782 F.2d 1362, 1364 (5th Cir.), *cert. denied*, 479 U.S. 819 (1986). The reasoning behind this policy is clear: when an attorney represents two clients with opposing interests, the attorney cannot serve both clients adequately. "Counsel can properly turn in no direction. He must fail one or do nothing and fail both. An attorney cannot properly serve two masters." ***Beets v. Scott***, 65 F.3d at 1270 (internal quotations and citations omitted).

## A. Actual Conflict

An "actual conflict" exists when an attorney represents two clients whose interests in the outcome of a matter are different. *United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994); *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985); *Mitchell v. Maggio*, 679 F.2d 77, 79 n.4 (5th Cir.) (citations omitted), *cert. denied*, 459 U.S. 912 (1982). We have found actual conflict when one client would benefit by a person testifying and one client would be harmed by it. *Nealy*, 782 F.2d at 1364. "The petitioner must specifically identify instances in the record that reflect that his counsel made a choice between possible alternative courses of action such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.), *cert. denied*, 464 U.S. 991 (1983); *United States v. Fox*, 613 F.2d 99, 102 (5th Cir. 1980).

Skelton apparently represented Fletcher in California in her attempts to avoid being forced to testify in Texas. At the same time, he also represented Perillo in her attempts to stop Fletcher from being forced to testify in Texas. At first glance, there would seem to be no actual conflict between Fletcher's and Perillo's interests (and therefore, no possible *Cuyler* violation). Perillo did not want Fletcher to testify and, at least when first subpoenaed, Fletcher did not want to testify. In fact, Fletcher went so far as to call Skelton and ask him to come to California to help her <u>avoid testifying</u>. However, while Fletcher may not have wanted to testify initially, it later became in her interest to do so. Once the offer of transactional immunity was on the table, Fletcher would benefit from testifying. With only use immunity from the Briddle trial, Fletcher could still be prosecuted for the murders; with transactional immunity she could not. Therefore, by accepting the offer of immunity and testifying against Perillo, Fletcher would be in a better position than she would have been by not testifying. As Fletcher's attorney, Skelton had a duty to advise her of her options. He had a duty to tell Fletcher that she would improve her legal situation by accepting the immunity and testifying against his other client, Perillo.

9

Skelton's representation of Fletcher was concurrent with his representation of Perillo. Skelton left Perillo's trial during the State's case in chief and flew to California to represent Perillo. Then, only two days later, Fletcher came to testify against Perillo.[8]

While Skelton might have gone to California with the purest of motives and with an intention to keep Perillo's interests in mind, the offer of transactional immunity for Fletcher changed the situation. After the State of Texas offered Fletcher transactional immunity, Fletcher's and Perillo's interests diverged. If Skelton recommended to Fletcher that she do what was best for her (accept the immunity and testify), he would hurt Perillo. Yet, if he honored Perillo's interests and told Fletcher to reject any deal and refuse to testify, he would hurt Fletcher. This is the exact type of situation where a lawyer "can properly turn in no direction." *Beets*, 65 F.3d at 1270. It is clear that Skelton labored under an actual conflict of interest.

## B. Adverse Effect

While *Strickland* requires a showing of actual prejudice, that is, that the result of the trial probably would have been different, *United States v. Greig*, 967 F.2d 1018, 1024 (5th Cir. 1992). *Cuyler* merely requires that the petitioner show only "adverse effect," a lower threshold. To prove adverse effect, a petitioner need not show that the conflict changed the outcome of the trial. *Nealy*, 782 F.2d 1365. "Once it has been established that an actual conflict exists, prejudice to the defendant must be presumed." *Mitchell v. Maggio*, 679 F.2d 77, 79 (5th Cir.), *cert. denied*, 449 U.S. 912 (1982). The error cannot be considered harmless, except in the most extraordinary circumstances. *Id*. In *Beets*, we characterized this standard as a "not quite *per se* rule of prejudice." *Beets*, 65 F.3d at 1269 (internal quotation omitted).

In *Beets*, we had occasion to revisit the conflict of interest area. The *en banc* court decided that multi-party representation conflicts (that is, where an attorney has a conflict

---

[8] Skelton flew to California for the hearing on Monday, November 5, 1984, the first day of testimony in Perillo's trial. Fletcher testified on Wednesday, November 7, 1984.

between two clients) are the only situations where the more lenient *Cuyler* standard applies. The *Beets* court, however, did not alter our law as to what constitutes adverse effect.[9] We have said before that to establish adverse effect, a petitioner need only show that his attorney's judgment was fettered by concern over the effect of that decision on the other client's case. *Nealy v. Cabana*, 782 F.2d 1362, 1365 (5th Cir. 1986). In *Nealy*, we found adverse effect because "[t]he lawyer who represented [two clients] was torn in his loyalty and unable to make a decision purely in the interest of one client to whom he owed undivided allegiance." *Nealy* at 1366.

In *Beets*, Judge King said that "[t]o establish an adverse effect on the basis of what an attorney failed to do, a defendant must demonstrate that some plausible alternative defense strategy or tactic -- `a viable alternative' -- might have been pursued." *Beets*, 65 F.3d at 1288 (King, J., dissenting). Other circuits have expressed the standard similarly. *United States v. Rodriguez*, 929 F.3d 747, 751 (1st Cir. 1991) (the petitioner "must demonstrate that some plausible alternative defense strategy or tactic might have been pursued."); *Church v. Sullivan*, 942 F.2d 1501, 1512 (10th Cir. 1991) (adverse effect when "a specific and seemingly valid or genuine alternative strategy was available to defense counsel, but it was inherently in conflict with his duties to others.") (internal quotations omitted); *Winkler v. Kleane*, 7 F.3d 304, 309 (2d Cir. 1993) (a petitioner "must demonstrate that some plausible defense strategy or tactic might have been pursued.") (internal quotations omitted), *cert. denied*, 114 S. Ct. 1407 (1994); *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir.

---

[9] The *Beets* majority opinion, written by Judge Jones, held that *Strickland* rather than *Cuyler* applied in the particular circumstances of that case. In an alternative holding, which was not adopted by a majority of the court, Judge Jones argues that even if *Cuyler* applied, there was still no showing of adverse effect. She received only five votes out of thirteen for that proposition. Judge King's dissent and Judge Higginbotham's concurrence rejected Judge Jones' attempt to raise the adverse effect hurdle. Therefore, a majority of the *en banc* court believed that the *Cuyler* adverse effect test was met in *Beets*.

11

1988) (a petitioner "must demonstrate that some plausible defense strategy or tactic might have been pursued."), *cert. denied*, 492 U.S. 906 (1989); *see* **Beets**, 986 F.2d at 1490 (Higginbotham, J., special concurring). Following the approach of our sister circuits, we hold that to show adverse effect, a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest.

In this case there are two distinct ways in which Skelton's simultaneous representation of Perillo and Fletcher adversely affected his representation of Perillo. First, Skelton could have taken actions to keep Fletcher from testifying. Second, Skelton could have aggressively cross-examined Fletcher, attempting to impeach her testimony. While we cannot predict whether these tactics would have been successful, the outcome is not determinative. What matters is that Skelton's simultaneous representation of Fletcher and Perillo foreclosed viable options. Perillo was adversely affected.

### 1. *Fletcher's Return to Texas*

Skelton's simultaneous representation in California of Fletcher and Perillo fettered his discretion. If Skelton had represented only Perillo at the California hearing, he could have made arguments to keep Fletcher from being returned to Texas to testify. The subpoena hearing in California was one of the most important events surrounding Perillo's trial, because it was there that the decision that Fletcher would have to testify was made. This decision proved fatal to Perillo because, as the Texas Court of Criminal Appeals recognized, Fletcher provided the damaging details that allowed the jury to answer the special punishment issues in favor of death. **Perillo**, 758 S.W.2d at 572.

The hearing in California on Fletcher's returning to Texas to testify was not a mere formality: the State of Texas had to prove that Fletcher was a material and necessary witness.[10] There were

---

[10] CAL. PENAL CODE §§ 1334 et seq. (UNIFORM ACT TO SECURE THE ATTENDANCE OF WITNESSES FROM WITHOUT A STATE IN CRIMINAL PROCEEDINGS (1974)). For a California court to enforce an out of state subpoena, the party seeking the subpoena must obtain a certificate from the state trial judge which states that (1) there is a criminal prosecution pending in the court; (2) a person within

grounds upon which Skelton representing Fletcher could have fought the subpoena. Texas had to show that Fletcher was a material and necessary witness. Because Fletcher did not testify at Perillo's first trial and Perillo was still found guilty and sentenced to death, it could certainly be argued that Fletcher was not material and necessary to the State's case against Perillo. Additionally, Skelton could have appealed the decision of the California court.

Perillo does not need to prove that the result of the trial would have been different absent the conflict -- this is not a *Strickland* case. Perillo only needs to show that the actual conflict adversely affected her. Perillo was adversely affected by her attorney representing the State's star witness against her in a proceeding to return the witness to testify, especially when it was in the witness' interest to testify.

## 2. *Skelton's Cross-Examination of Fletcher*

The Court of Criminal Appeals said that:

> Fletcher's direct testimony was most damaging to [Perillo], not only as it pertained to the question of guilt, but also as it related to the special punishment issues, particularly future dangerousness. Other than testimony from two California police officers that [Perillo's] reputation there for peaceableness was bad, in this cause the State would present no new evidence at the penalty stage bearing on this issue. Fletcher's testimony was undeniably susceptible to interpretation as demonstrating in appellant's attitude both before and after commission of the offense a most `calculated and cold-blooded' bent. <u>It was imperative that [Skelton] neutralize the effect of that testimony, if he could</u>. (Emphasis added.)

*Perillo*, 758 S.W.2d at 572 (internal citations omitted).

Faced with the decision of how to neutralize Fletcher's testimony, Skelton did not choose to attack her credibility and impeach her as a witness. The Court of Criminal

---

the state [California] is a material witness in that prosecution," and (3) his or her presence will be required for a specified number of days. CAL. PENAL CODE § 1334.2. At a hearing, the judge will determine if (1) the witness is material and necessary; (2) whether requiring the witness to testify in the other state will cause him or her under hardship; and (3) whether the laws of the other state will protect the witness from arrest and service of civil and criminal process. *Id*.

Appeals itself recognized that Skelton's cross-examination of Fletcher was not rigorous.[11] ***Perillo v. State***, 758 S.W.2d 567, 572 (Tex. Crim. App. 1988). Rather, Skelton chose to portray both Fletcher and Perillo as victims, manipulated by the evil Briddle.

The district court held that "Skelton's decision not to engage in impeachment or rigorous cross-examination of Fletcher at Perillo's trial was a reasonable trial strategy supported by sound professional judgment." However, this is the wrong legal standard. The proper question is whether some plausible defense strategy or tactic might have been pursued, but was not, because of the conflict of interest. *Supra* III(B).

Skelton had another plausible defense strategy that he could have used: he could have attacked Fletcher's credibility and attempted to impeach her testimony. In her petition, Perillo identifies at least six particular items which Skelton could have used to impeach Fletcher.[12] This aggressive strategy could have led the jury to believe at least two things:

---

[11] Skelton did not perform much better when Fletcher was being directly examined by the State. Skelton did not object even once to her testimony.

[12] In her federal habeas petition, Perillo alleged that:

(a) Skelton failed to mention or adduce evidence that at the time of her arrest, Fletcher had blood on her jeans. This evidence would have shed doubt on Fletcher's credibility and on the veracity of her statements that she did not participate in the crime for which Ms. Perillo was tried.

(b) Skelton failed to point out to the jury that Ms. Perillo turned Fletcher in to the police, giving Fletcher a motive for incriminating Ms. Perillo. This evidence would have impeached Fletcher's testimony.

(c) Skelton failed to impeach Fletcher's inconsistent testimony that Fletcher told Denver police that the last time she saw Banks he *let her off on the freeway and that as far as she knew, Banks was alive and well*. Fletcher's statement substantially conflicts with her testimony at Ms. Perillo's trial. The inconsistent statement, presented at Briddle's trial, would have shed doubt on Fletcher's credibility.

(d) Skelton failed to elicit testimony that the only fingerprints identified in the entire trial were Fletcher's. By failing to identify the fingerprint match, Skelton prejudiced the jury against Ms. Perillo by suggesting they were her fingerprints instead of Fletcher's.

(e) Skelton incriminated Ms. Perillo by eliciting testimony from Fletcher regarding Ms.

14

(1) Fletcher's role in the murder was not as passive as she implied and (2) Fletcher held a grudge against Perillo because it was Perillo's confession that caused her arrest. This certainly could have led the jury to discount Fletcher's tale about Perillo's cruelty and cold-heartedness. Impeaching Fletcher might not have gotten Perillo acquitted, but, the trial was not about guilt, it was about punishment. With Perillo's confession, the only real issue in the trial was whether Perillo would be sentenced to death. Impeaching Fletcher certainly could have caused the jury to answer "No" on the special punishment issues, especially the one about future dangerousness. The Court of Criminal Appeals noted that the only real evidence the State presented on future dangerousness came from Fletcher. *Perillo*, 758 S.W.2d at 572.

We must remember that under *Cuyler* the issue is not what was the best strategy, but whether there was a *plausible* defense strategy that might have been pursued but was not, because of the conflict of interest. It is difficult to believe that impeaching the star state witness would not be a plausible defense strategy.

Impeaching Fletcher was a plausible defense strategy, but Skelton's representation of her precluded him from adopting it. Instead, he chose the only strategy consistent with his dual representation of Fletcher and Perillo. Skelton's duty of loyalty to Fletcher stopped him from considering a strategy that involved aggressively attacking Fletcher's credibility.

---

Perillo's alleged participation in a variety of extraneous offenses.

(f) Skelton protected Fletcher from a rigorous cross-examination by reviewing his cross-examination with Fletcher prior to her testimony.

(Emphasis in original; internal citations omitted).

15

Skelton's plan of making Fletcher and Perillo appear sympathetic "was not a free choice of strategy. It was the only course open." *Foxworth v. Wainwright*, 516 F.2d 1072, 1079-80 (5th Cir. 1975).[13]

## IV. CONCLUSION

Perillo is claiming that her Sixth Amendment right to counsel was violated because her attorney at her capital murder trial, Jim Skelton, had an actual conflict of interest. Perillo sought discovery and an evidentiary hearing at the federal district court, but they were denied.

In order to be entitled to discovery and an evidentiary hearing, a federal habeas corpus petitioner must show (1) that there is a factual dispute that, if resolved in the petitioner's favor, would entitle him to relief and (2) the State has not afforded the petitioner a full and fair evidentiary hearing. The state habeas corpus court did not make any factfindings relevant to Perillo's conflict of interest claim. Even if any factfindings were made, they were not the product of a full and fair evidentiary hearing. Perillo has shown that there is a factual dispute about Skelton's representation of both Fletcher and Perillo during the time of Fletcher's subpoena hearing in California. If the dispute is resolved in Perillo's favor, she is entitled to relief because Skelton's actions created an actual conflict that adversely affected Perillo. Therefore, the district court erred in not allowing discovery and an evidentiary hearing. The judgment of the district court is VACATED and the case is REMANDED for appropriate discovery and an evidentiary hearing. We reiterate that we do not mean to suggest to the district court, what result it should reach on remand, following the hearing.

---

[13] We are disturbed by what is an uncontroverted fact in the habeas record, i.e. that upon her return to Texas to testify in Perillo's second trial, Fletcher stayed at the home of Skelton the night before her testimony was given. Skelton and the State attempted to rationalize the propriety of this conduct on the basis of the "friendship" which developed between Fletcher and Skelton when Skelton represented Fletcher in her aggravated robbery trial and which was later evidenced by Skelton going to California to "give Fletcher away" at her second marriage. But that rationalization simply confirms the reality of the conflict of interest position in which Skelton placed himself.

GARWOOD, Circuit Judge, concurs in the result.