**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-10616
_____


ANDRE ANTHONY LEWIS

                                         Petitioner-Appellant,


versus


GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

                                         Respondent-Appellee,


- - - - - - - - - -
Appeal from the United States District Court
for the Northern District of Texas
(93-CV-0329-G)
- - - - - - - - - -
September 13, 2000


Before KING, Chief Judge and DAVIS and WIENER, Circuit Judges.

WIENER, Circuit Judge:[*]

Petitioner-Appellant Andre Anthony Lewis appeals the district court's denial of his petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.  This case is before us on a certificate of probable cause (CPC).  Lewis puts forward thirteen claims, the three most substantial of which are that (1) he is entitled to an

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

evidentiary hearing, (2) he received ineffective assistance of counsel, and (3) the state knowingly introduced false testimony. Our principal focus will be on those three, but we shall nevertheless identify and briefly address all thirteen claims.

## I. *Facts and Proceedings*

Andre Anthony Lewis was convicted of capital murder in the course of robbing a convenience store in Carrollton, Texas. He was aided in the robbery by two other men, including his uncle, Willie Charles Berry. During the robbery, the murder victim, Matt McKay, innocently entered the store as a potential customer and was immediately ordered by Lewis to lie on the floor (presumably so that he would not be able to identify the robbers). When the frightened and confused McKay hesitatingly failed to respond, Lewis shot him in the abdomen, then punched him and kicked him three times as he lay on the floor. Lewis and one of his cohorts then completed the robbery and left in a get-away car driven by Berry. The events of the robbery were captured on videotape by the store's security camera and were also witnessed by the store clerk and a number of customers.

Lewis was not arrested until more than six months later and then as a result of statements made by Berry, who at the time was incarcerated on an unrelated charge. Lewis was tried on capital murder charges, found guilty, and sentenced to death. He appealed this conviction to the Texas Court of Criminal Appeals, which affirmed his conviction and sentence. Rehearing was denied. The

United States Supreme Court denied a petition for a writ of certiorari. Lewis then filed a state habeas petition which the state court denied the next day. Approximately one month later, the Texas Court of Criminal Appeals issued an order denying Lewis's habeas application. He then filed a petition for a writ of habeas corpus in federal district court and sought a stay of execution pending his application for collateral relief. The district court granted his motion for stay of execution but subsequently denied his habeas petition, based largely on the recommendations of the magistrate judge. The district court granted CPC, and this appeal followed.

## II. *Analysis*

### A. Standard of Review

Lewis filed his petition for habeas relief in the district court in 1993, before the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA").[1] Consequently, this claim is reviewed under our pre-AEDPA standard of review, pursuant to which we review "the district court's determinations of law de novo and its findings of fact for clear error."[2] "[W]e presume all state court findings of fact to be correct in the absence of clear and convincing evidence" to the contrary.[3]

### B. Entitlement to a full and fair evidentiary hearing

---

[1] 28 U.S.C. § 2254.

[2] Venegas v. Henman, 126 F.3d 760, 761 (5th Cir. 1997).

[3] Williams v. Scott, 35 F.3d 159, 161 (5th Cir. 1994).

Lewis claims that in the state and federal habeas courts he was denied the due process guaranteed to him under the Fourteenth Amendment. He argues that this deprivation resulted from his being accorded only insufficient "paper hearings." Lewis claims that the district court's findings quoted extensively from the findings of the state habeas court which, Lewis contends, were written by the state prosecutors and merely rubber-stamped by the state habeas court the day after the habeas petition was filed. He further asserts that, as the state habeas judge was not the trial judge and the habeas petition involved several credibility issues and other factual questions, the habeas judge should not only have taken more time but should have held "live" hearings on these issues. Lewis thus advances that these hearings were not "full and fair," so the district court should not have deferred to the state court's findings of fact.

"A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing."[4] Thus Lewis must show not only that he was not accorded a full and fair opportunity to have his factual disputes adjudicated but also that he was prejudiced by that deprivation. He fails on both counts.

---

[4] <u>Ward v. Whitley</u>, 21 F. 3d 1355, 1367 (5th Cir. 1994).

4

Although Lewis is able to point to some areas where the facts might be in doubt, he fails to demonstrate that he has not been afforded a full and fair hearing. His strongest contention is that the state habeas judge was not the state trial judge and thus was not in a position to make informed decisions on such questions as witness credibility. This is admittedly an important factor in determining whether a paper hearing is sufficient, yet it "is but one factor to consider."[5] We must decide, on a case-by-case basis, whether in light of all the circumstances the defendant received a full and fair opportunity to have his factual disputes weighed on state habeas review.[6]

Lewis provides at best weak evidence of factual errors by the trial court, largely in the form of unsworn, unsigned affidavits or statements of experts who appeared only after the trial. Lewis also offers no convincing proof that the state habeas judge, even if convinced of the reliability of the "evidence" presented by Lewis, would have found the shooting to have been the result of impulse or that it was anything less than deliberate and specifically intended. As the entire crime was captured on videotape, the state habeas judge was reasonably unpersuaded by Lewis's "proof." Irrespective of whether the judge actually watched the tape or merely reviewed the state's detailed description of the events captured on it, none contest that the

_____

[5] See Perillo v. Johnson, 79 F.3d 441, 447 (5th Cir. 1996).

[6] See id.

5

state accurately described the incident. The judge was thus undoubtedly aware that Lewis aimed the gun, cocked the hammer, shot the victim, kicked and punched him, and then calmly turned back to complete the robbery, which the shooting had interrupted. The district court did not err in granting deference to the state's findings of fact.

As for prejudice, Lewis has also failed to show that if the factual disputes he alleges had been resolved in his favor, the result at either phase of the trial would likely have been different. As we demonstrate in subsequent parts of this opinion, Lewis cannot show that the jury, in either the guilt or punishment phase, would have reached a different verdict even if the jurors had concluded that his factual assertions are true. We cannot stress enough how clearly the videotape of the crime, as corroborated by eyewitness testimony, disproves Lewis's contention that he lacked the requisite mental state to commit capital murder or that his actions were involuntary. Neither could he expect to dissuade the jurors with mitigating evidence when they saw for themselves the way that he calmly and deliberately conducted himself throughout the course of the robbery and the murder, and the way that he exhibited no remorse after the shooting. We reject Lewis's claim that he is entitled to a full-blown, "live" evidentiary hearing and to discovery.

C.  Ineffective Assistance of Counsel

Lewis claims that his Sixth Amendment rights were violated by the ineffective assistance provided by his counsel at both the guilt and punishment phases of his trial.  Specifically, he alleges that his counsel failed to investigate and thus to introduce evidence of his alleged abusive childhood and exposure to lead poisoning.  Lewis insists that such evidence would have demonstrated to the jury that he shot the victim as the result of an impulsive reaction and not with specific intent to do so, or at least cast reasonable doubt on the issue.  Lewis also argues that this evidence would have had a mitigating effect that in turn would have influenced the jury not to impose a sentence of death.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense."[7]  This test is disjunctive, so failure to succeed on either prong is fatal to a petitioner's claim.[8]

1.  Performance of Counsel: Cause.

To prove that counsel's performance was deficient, petitioner must show that it "fell below an objective standard of reasonableness."[9] In addressing this claim, our scrutiny "must be

---

[7] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

[8] See id.

[9] Id. at 688.

7

highly deferential:...A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[10]  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[11] We also must keep in mind that "[t]he central purpose in examining any claim of ineffective assistance of counsel is to ensure that the defendant was accorded due process, 'not to grade counsel's performance.'"[12]

Lewis contends that counsel's performance was reversibly deficient because of failure to put on psychiatric evidence at the guilt or punishment phase of the trial.  Specifically, Lewis alleges that he has "frontal lobe syndrome," a condition, he insists, that affects one's judgment, motor skills, and ability to control impulse.  Lewis urges that if the jury had been aware of this condition, they could have concluded that his shooting of the victim was the result of an impulse reaction and was not a deliberate, intentional act.

Defense counsel was not likely aware of any such mental health deficiency, for Lewis neither so informed counsel nor exhibited any

---

[10] Id. at 688.

[11] Id. at 689.

[12] Bouchillon v. Collins, 907 F.2d 589, 594 (5th Cir. 1990) (quoting Strickland, 668 U.S. at 697).

signs or symptoms of it during the videotaping of the robbery.  On the contrary, Lewis conducted himself in a cool, collected manner throughout the entirety of the ten-minute robbery, including the final minutes following the shooting.  In fact, as customers entered the store, Lewis even played the role of store clerk, operating the register, making change on a gasoline purchase, selling cigarettes, and providing directions to a nearby hotel. The videotape clearly refutes any contention that Lewis's actions during the shooting demonstrated an involuntary reflex action or anything else that should have alerted counsel to a positive mental or neurological problem.

Nothing in these facts would prompt reasonable counsel to wonder about Lewis's mental or neurological condition, much less suspect that he suffers from some sort of defect rendering him unable to control his impulses.  Even if some lawyers might routinely initiate inquiries into their capital murder clients' psychological and physiological states, we cannot say that in every capital case counsel is professionally obligated to investigate for the possibility of psychological or neurological deficiencies of his client absent some reason to suspect that the client "suffered from a mental defect at the time of the offense or trial."[13]  More importantly in this case, counsel could have reasonably assumed that the jury would not have been swayed by such an argument after

---

[13] Barnard v. Johnson, 958 F.2d 634, 642 (5th Cir. 1992).

witnessing Lewis's performance during the robbery and shooting, and might even have reacted by way of backlash against such tactics.

Lewis also contends that counsel's assistance was ineffective in failing to put on mitigating evidence of his abusive childhood and mental defects caused by lead exposure. At the time of Lewis's trial, evidence of such abuse was not admissible relative to Texas's special issues at the punishment phase.[14] And counsel did put on mitigating evidence intended to humanize Lewis: His grandmother testified that he was remorseful after killing the victim, but answered in the negative when asked if she had ever seen Lewis's father beat him. Lewis's grandmother did testify that he was neglected by his father, suffered bruises, was often afraid to go home, and had a generally unhappy childhood. Even though the grandmother subsequently signed an affidavit in which she avers that Lewis's father was a brutal man who regularly beat his children,[15] neither she nor Lewis has offered an explanation for her failure to testify about these matters at trial. Thus it cannot be said that Lewis's counsel failed to adduce this evidence, only that the witness failed to provide it.

---

[14] Lewis was found guilty on June 2, 1987, well prior to the Supreme Court's decision in <u>Penry v. Lynaugh</u>, 492 U.S. 302, 109 S.Ct. 2934 (1989) which set forth the current rule allowing evidence of abuse at the punishment phase of a capital trial.

[15] Specifically, the affidavit alleges that Odell Lewis (Lewis's father) once beat Lewis in the face with a piece of firewood, and that making his children strip naked, he would tie them up and whip their private parts with switches or extension cords.

A trial counsel's "strategic choices made after thorough investigation of the law and facts relevant to plausible options" are to be reviewed with great deference and, in fact, are "virtually unchallengeable."[16]  Counsel did put on mitigating evidence but either chose, for tactical reasons, not to put forward the argument regarding Lewis's lead exposure or was excusably unaware of the exposure and its alleged effect on Lewis.  As such, this "failure" to put on evidence cannot be construed as ineffective assistance of counsel.

2.  Prejudice

But even if we assume arquendo that Lewis's attorneys failed to provide effective legal assistance, we would conclude that Lewis was not prejudiced.  To prove that his defense has been prejudiced by the deficiencies of counsels' performance, Lewis must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[17]  With regard to the alleged errors of counsel at the sentencing phase, we ask "whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent that it independently

---

[16] Id. at 690-91, 2066.

[17] Strickland, 668 U.S. at 694.

reweighs the evidence —— would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."[18]

Lewis claims, as noted above, that the evidence his counsel should have adduced would have shown that the killing was the result of an impulse reaction and thereby soften the sentiments of the jurors toward him.  Lewis has not proven, however, that the evidence of his abusive childhood or his exposure to lead poisoning would have had this psychological or neurological effect and, moreover, he has not shown that this evidence would have dissuaded the jury from sentencing him to death. As observed earlier, the jury actually *watched* the crime play out, presumably weighing Lewis's behavior throughout, and deciding first-hand whether his action in shooting the victim was a deliberate and intentional act or merely an involuntary reflexive one.  Testimony of an abusive childhood or exposure to lead is unlikely to have convinced the jurors that the shooting was an impulse reaction when they could see quite clearly for themselves that Lewis cooly turned aside from his robbing and deliberately cocked the gun and pulled the trigger. They also saw that rather than reacting as one whose unintended reflex had produced the fatal wounding of another, Lewis further assaulted the victim as he lay on the floor then returned to his larcenous pursuit with equal equanimity.

Likewise, the jury was not likely to have bought Lewis's claim of remorse for his actions or to have their feelings "softened"

_____

[18] Id. at 695.

12

toward him after they watched him kick and punch the victim while he writhed on the floor with a bullet wound in his abdomen, then proceed to play-act the storekeeper role as he completed the robbery. The jurors were also aware that, after completing the instant robbery, Lewis and his cohorts went to a pool hall and drank beer, and that less than a month after the instant robbery, Lewis proceeded to rob another store. These are hardly the actions of a man overcome with remorse for an unintentional, involuntary killing. In light of Lewis's behavior in both the immediate and extended wake of the shooting, sympathy for Lewis would not be the expected emotion of the jurors. Quite simply, Lewis has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19]

D. Alleged False Testimony of Willie Berry

Lewis alleges that the prosecution knowingly introduced and relied on the false testimony of his uncle, Willie Berry, specifically Berry's denial that he made a "deal" with the prosecution in return for his testimony against Lewis, thereby denying Lewis of due process. The state habeas court made findings of fact which, in relevant part, stated unequivocally that no deal existed between the State and Berry at the time of his testimony, only that — as Berry himself testified — the prosecution indicated that it would take into consideration any truthful

---

[19] Id. at 695.

testimony Berry gave in cooperation with the State when considering the charges against him.

In reviewing pre-AEDPA capital cases, we presume "state court findings of fact to be correct in the absence of clear and convincing evidence" to the contrary.[20] In light of Berry's testimony, the prosecution's affidavits, and the indisputable fact that the charges against Berry were not dismissed until two months after he testified against Lewis, we are convinced that Lewis has failed to produce such clear and convincing evidence. Consequently, the evidence put forth by Lewis purporting to prove the existence of a deal and to show that Berry's contrary testimony was false is not sufficient to render the state habeas court's reliance on these findings of fact unreliable or to convince us that a mistake has been made.[21]

E. Other Claims

1. Special Issues, as Interpreted and Applied in this Case, Are Unconstitutionally Vague

Lewis contends that the two Texas special sentencing issues, as instructed to the jury, were unconstitutionally vague because the jurors were not furnished clear meanings of the core terms

---

[20] Williams, 35 F.3d at 161.

[21] Lewis's main evidence is an unsigned, unsworn statement by Berry attached to the affidavit of Joseph D. Ward, a Capital Defense Investigator for the Texas Resource Center; that document specifies that Berry refused to sign an affidavit swearing that he received a deal from prosecutors prior to his trial testimony. Lewis also offered two unverified memoranda from the prosecutor's office which, on their faces, do not show that a deal had been made prior to Berry's testimony.

14

"deliberately" and "probability."  This issue has been disposed of both by the Supreme Court and by this court on numerous occasions. The Supreme Court has held that factors for sentencing are sufficiently clear if each factor has some "common-sense core of meaning...that criminal juries should be capable of understanding"[22] and has held specifically that the wording of the Texas special issues meet this standard.[23]  In addition, we have addressed and rejected complaints asserting vagueness of specific words and phrases in the special issues, including the terms "deliberately" and "probability."[24]  The magistrate judge correctly reached these conclusions and we thus affirm the order of the district court, adopting his Findings, Conclusions, and Recommendation.

2.   Inclusion of a Mentally Disabled Juror at the Guilt Phase

Lewis alleges that his rights to a fair trial under the Sixth and Fourteenth Amendments were violated by the inclusion of a mentally disabled juror at the guilt phase of his trial.  He seeks a new evidentiary hearing, contending that the hearing held on this question was not "full and fair."[25]  Juror Number 7, Herbert May, suffered a mental breakdown between the guilt and punishment phases

---

[22] <u>Tuilaepa v. California</u>, 512 U.S. 967, 973, 114 S.Ct. 2630, 2636 (1994) (citing <u>Jurek v. Texas</u>, 428 U.S. 262, 279, 96 S.Ct. 2950, 2959 (1976) (White, J., concurring in judgment)).

[23] <u>See</u> <u>Jurek</u>, 428 U.S. at 279.

[24] <u>See</u> <u>Woods v. Johnson</u>, 75 F.3d 1017, 1034 (5th Cir. 1996).

[25] <u>See</u>  <u>Townsend v. Sain</u>, 372 U.S. 293, 313, 83 S.Ct. 745, 757 (1963); <u>Perillo</u>, 79 F.3d at 447.

15

of the trial and was excused from the punishment phase, which was conducted with the remaining eleven jurors without objection from Lewis. A hearing was held before commencement of the punishment phase to ascertain whether May was fit to continue serving as a juror for the remainder of the proceedings and to determine whether his inclusion in the guilt phase had tainted those proceedings. After examining the evidence, especially the testimony of Dr. Cliff Cornette, an expert introduced by the State who had examined May, the court determined that although May could not continue to serve as a juror, he had exhibited no clear signs of mental disability prior to his breakdown which occurred after the verdict of guilty. Lewis now proffers "evidence," in the form of a conversation of counsel with May's widow, to the effect that May had in fact exhibited such signs earlier in the trial. It is unlikely, however, that even if such evidence had been adduced, it would have overcome the diagnosis of the psychiatrist that May had suffered only a "brief reactive psychosis" and had no prior mental disability. The statements of counsel regarding an alleged conversation with May's widow are insufficient to constitute "substantial new evidence."[26] Lewis has not shown that his rights to a full and fair hearing on this issue were violated.[27] We thus affirm the district court's order adopting the magistrate judge's Findings, Conclusions, and Recommendation.

---

[26] Townsend, 372 U.S. at 313.

[27] See id.

16

3.   The Batson Claim

Lewis alleges that the prosecution used its peremptory strikes in a racially discriminatory manner, in violation of defendant's Fourteenth Amendment rights as set forth in Batson v. Kentucky.[28] We have considered this position in light of the briefs and pertinent portions of the record.  Considering the race-neutral explanations offered by the prosecution for its challenges and the *voire dire* record, the magistrate judge correctly found that Lewis failed to show that there was clear and convincing evidence disproving the trial court's findings.  Finding no reversible error of fact or law, we agree with the district court's disposition of this claim for essentially the reasons stated in the magistrate judge's Findings, Conclusions, and Recommendation.

4.   Punishment Phase Decisionmakers Acted with a Racially Discriminatory Purpose

Lewis alleges that the jury acted with a racially discriminatory purpose in sentencing him to death.  He bases this claim on statistical data and anecdotal evidence published in a newspaper article some eighteen months prior to the trial.  He has proffered no discrete evidence, however, to show that these jurors or this prosecutor acted with racial animus.  We have considered this claim in light of the briefs and pertinent portions of the record. Having done so, we find no reversible error and affirm the

---

[28] 476 U.S. 79, 106 S.Ct. 1712 (1986).

17

district court's disposition of the claim for essentially the reasons stated in the magistrate judge's Findings, Conclusions, and Recommendation. Specifically, the magistrate judge properly found that Lewis has failed to demonstrate by credible evidence, as is necessary to show a constitutional violation, that the particular decisionmakers or the prosecution acted with a discriminatory purpose in *this* case.

5.   Presentation of False and Misleading Testimony by the State

Lewis claims that the prosecution intentionally introduced and secured false testimony against him. Specifically, he alleges that Willie Berry falsely testified during the punishment phase that Lewis had participated in a previous robbery in Mesquite, Texas, testimony that Lewis claims Berry has since recanted. According to Lewis, the testimony was given in response to pressure asserted by the prosecution. Lewis also claims that the prosecution secured the testimony of an imposter playing the role of "Kenneth Nichols."[29] Our consideration of these claims in light of the briefs and pertinent portions of the record leads us inescapably to conclude that neither the record nor the putative new evidence proffered by Lewis supports these claims. The magistrate judge correctly found that the unsigned, un-notarized "affidavit" of

---

[29] In support of this claim, Lewis offers only an unsworn, unsigned affidavit of fact from Willie Berry, and Lewis's counsels' report of a purported conversation with the "real" Kenneth Nichols, who claims never to have testified at Lewis's trial.

18

Berry is insufficient to outweigh the presumed veracity of Berry's sworn testimony. Similarly, Lewis's unexplainedly belated presentation of the affidavit of Kenneth Nichols, as well as the tenuous content of the affidavit itself, is insufficient to overcome the presumption of correctness accorded the state findings of fact which assert that the Kenneth Nichols who testified at trial was the "real" one. As such there was no reversible error, so we affirm the district court, again for essentially the reasons stated in the magistrate judge's Findings, Conclusions, and Recommendation.

6.  Refusal to Admit Evidence of Defendant's Remorse at Punishment Phase

Lewis next asserts that his right to due process was violated by the trial court's refusal to admit a portion of the punishment phase testimony of Lewis's grandmother when the court sustained hearsay objections to that testimony. Although the court did refuse to admit Lewis's grandmother's hearsay statements, it allowed her to testify that Lewis had cried and shown great remorse for killing Matt McKay. Our consideration of this assignment of error in light of the briefs and the record produces no sign of reversible error, so we again affirm the district court for essentially the reasons set forth in the Findings, Conclusions, and Recommendation of the magistrate judge. The magistrate judge correctly found that our precedent does not require the admission

of hearsay evidence at the punishment phase of capital trials, Lewis's contentions to the contrary notwithstanding.

7.  Preclusion of Relevant Background and Character Evidence from Jury Consideration

Lewis contends that, in violation of the rule of <u>Penry v. Lynaugh</u>,[30] the jury was precluded from considering his character and background, thereby violating his right to an individualized sentencing determination.  Specifically, Lewis objects to the court's refusal to allow testimony that (1) he was "only" nineteen years old at the time of the offense, (2) he confessed to the robbery and the "accidental" shooting at the time of his arrest, (3) he demonstrated great remorse for his conduct and for the death of the victim, and (4) he had suffered physical and psychological abuse as a child and was raised in a troubled, un-nurturing environment.  The record of this case and the applicable law undermine Lewis's position on this issue.  The magistrate judge properly found that the proffered evidence Lewis sought to have introduced was not reasonably likely to have weighed successfully against the imposition of the death penalty or, in the case of the testimony of his grandmother, was already within the effect of the jury.  Therefore, no constitutional violation occurred.  Agreeing with the reasons stated in the magistrate judge's Findings, Conclusions, and Recommendation, we adopt them by reference and affirm the district court.

---

[30] 492 U.S. 302, 109 S.Ct. 2934 (1989).

8.   Prosecutorial Misconduct During Trial

Lewis argues that his trial was rendered fundamentally unfair by the misconduct of the prosecution.  Specifically, he insists that the prosecutor injected his personal opinion during the closing argument of the guilt phase and again during the penalty phase of the trial, thereby improperly shifting the burden of proof to the defense. Our careful review of the transcripts of the pertinent portions of the trial reveals no reversible error of fact or law in this regard.  The magistrate judge found all but one of Lewis's claims to be procedurally barred by Lewis's failure to object contemporaneously to these alleged improprieties at trial. Further, Lewis failed to show, as he must to prove that his constitutional rights were violated, that the remarks amounted to persistent and pronounced misconduct or that they likely influenced the outcome of the trial.  To the extent any of the statements were improper, their effect was harmless, as more fully explained by the magistrate judge in his Findings, Conclusions, and Recommendation, with which we agree.

9.   Allegedly Involuntary Nature of Lewis's Statement

Lewis contends that his confession was involuntary and thus was improperly admitted at the trial.  Once again, the explanation contained in the magistrate judge's Findings, Conclusions, and Recommendation dispels any doubt that Lewis's contentions in this

21

regard are without merit. This claim is procedurally barred as Lewis failed to contest the admission of his statement on direct appeal. Moreover, even if the claim were not procedurally barred, we agree with the magistrate judge that it is without merit and unsupported by the record or the state court's findings of fact.

10. Inclusion of a "Voice-print" Examiner

Lewis would assign error to the admission of a voice-print examiner, insisting that it constituted violation of Texas law. We agree with the magistrate judge's opinion, as set forth in his Findings, Conclusions, and Recommendation, that this claim is without merit. Lewis has not shown that this admission violated Texas state law. Moreover, the admission of the testimony of the voice-print expert violated no constitutional right and did not render Lewis's trial fundamentally unfair.

## III. *Conclusion*

For the foregoing reasons we affirm the district court's order denying Lewis's petition for habeas corpus.

AFFIRMED.