UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LARRY E. PATTERSON,
Petitioner-Appellant,

v.

VIRGINIA DEPARTMENT OF

CORRECTIONS,
Respondent-Appellee.

No. 96-7438

THEODORE J. BURR, JR.,
Amicus Curiae.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-95-335-3)

Argued: April 8, 1998

Decided: September 22, 1998

Before WIDENER, MURNAGHAN, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert James Wagner, WAGNER & WAGNER, Rich-
mond, Virginia, for Appellant. Robert H. Anderson, III, Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Mark L. Earley, Attorney

General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee. Theodore J. Burr, Jr., OUTTEN, BARRETT, BURR & SHARRETT, P.C., Emporia, Virginia, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Larry E. Patterson appeals the district court's dismissal of his petition for a writ of habeas corpus. Patterson contends that the district court erred in concluding that his defense lawyer's social, professional, and financial relationship with the prosecutor in his state criminal case did not constitute a conflict of interest that compromised his right to effective assistance of counsel. We affirm.

I.

On September 3, 1991, shortly after 1:00 a.m., Patterson knocked on Rebecca Franklin's door and asked to use her phone. Franklin admitted Patterson into her apartment because she believed he was a tenant in the apartment above hers and because she had previously engaged in several friendly conversations with him. Once inside, Patterson attacked Franklin with a knife. He threw her on the bed, cut her neck, handcuffed her, and forced her to swallow a small piece of paper. He raped her several times, orally sodomized her, and placed a sexual device in her vagina. Patterson then forced Franklin to fetch her camera. He took several photographs as leverage to discourage her from going to the police. Among these were a picture that featured Franklin's face being splattered by a stream of yellow liquid that appeared to be Patterson's urine and a picture of Franklin urinating in a bathtub. Patterson left the apartment with the film around 6:00 a.m. He was arrested two days later by Detective Ray House, and the film was recovered from his apartment.

2

Patterson hired Gary R. Hershner to represent him. Hershner had several connections to Joseph D. Morrissey, the Commonwealth's Attorney for the City of Richmond and the prosecutor who handled the case against Patterson. Hershner and Morrissey were friends and former law partners, and they jointly owned an interest in the building in which they had practiced law together. When Morrissey became Commonwealth's Attorney, Hershner took over Morrissey's space in the office building and assumed his share of the mortgage. At the time Patterson was charged in late 1991, Hershner was serving (without compensation) as one of the lawyers defending Morrissey in a civil lawsuit brought by the parents of Antonio Finney (a former client of Morrissey), who were suing Morrissey for fraud arising out of the fee arrangement. During their initial meeting when Patterson retained Hershner, Hershner advised Patterson of his various associations with Morrissey, including his representation in the lawsuit. Patterson did not object. Although Hershner later filed (in January 1992) a related lawsuit for Morrissey against Finney's parents, Hershner did not expressly advise Patterson about that suit. "[Patterson] was, nevertheless, continuously aware that Hershner was representing Morrissey." Commonwealth v. Patterson, No. 96-7438, report and recommendation at 4 (E.D. Va. June 13, 1996).

In preparation for Patterson's trial, Hershner obtained discovery from the Commonwealth, which included photographs made from the film seized at Patterson's apartment. Among these were a number of shots taken by Franklin at a family reunion as well as the photographs taken by Patterson on September 3, 1991. Hershner considered the photographs to be damaging evidence in large part, as they appeared to corroborate Franklin's story and to depict the vile nature of Patterson's treatment of Franklin.

Notwithstanding this assessment, and perhaps in anticipation of the photographs' introduction into evidence, Hershner argued in his opening statement that the pictures would show Franklin's cooperation in a sexual encounter. Morrissey, the prosecutor, did not introduce the photographs into evidence, however, and instead called Detective House to testify as to their contents. Over Hershner's objection, the detective was allowed to testify that one photograph showed Patterson urinating in Franklin's face and that another showed Franklin urinating in the bathtub. While cross-examining the detective, Hershner dis-

3

covered that only the innocuous family reunion photographs were in the courtroom. Hershner introduced these photographs into evidence and asked Morrissey for the remaining photographs. Even though House had delivered all of the photographs to Morrissey right before the trial began, Morrissey responded that he "did not have any ---." Consequently, Hershner modified his strategy and argued to the jury that the photographs described by Detective House did not exist. Thus, Hershner abandoned his initial argument that the photographs demonstrated cooperation, and he did not make any further request for their production.

Patterson was convicted of rape, robbery, and two counts of forcible sodomy. He was sentenced to 65 years in prison, with five years suspended. Patterson's petitions in state court for direct appeal and habeas corpus were unsuccessful. Patterson then filed the present habeas petition in federal court, raising a number of claims, including the claim that Hershner was ineffective in representing Patterson as a result of his (Hershner's) various relationships with the prosecutor. The district judge referred the ineffective assistance claim to a magistrate judge for a report and recommendation. The magistrate judge recommended that the claim be dismissed on the ground that Patterson "failed to establish his attorney [Hershner] had an `actual conflict' or that anything his attorney did had an adverse impact on [Patterson's] case." Patterson, report and recommendation at 8. The district court adopted the report and recommendation of the magistrate judge, and this appeal followed.

II.

The crux of the appeal is Patterson's claim that his Sixth Amendment right to effective assistance of counsel was compromised by his lawyer's social, professional, and financial relationship with Morrissey, the prosecutor.[1] Specifically, Patterson claims that Hershner should have been more aggressive in pursuing production of the missing photographs or should have at least advised the jury that the prosecutor either lost or was withholding exculpatory evidence. Patterson

_____

[1] We conclude that Patterson has not procedurally defaulted his Sixth Amendment conflict of interest claim and that the claim is not barred by Teague v. Lane, 489 U.S. 288 (1989).

4

contends that Hershner failed to do so because he wished to spare Morrissey the professional embarrassment and career damage that would attend the exposure of Morrissey's incompetence or ethical misbehavior. Patterson thus claims that Hershner's relationship with Morrissey adversely impacted his representation.

The Sixth Amendment guarantees to all defendants in criminal cases the right to effective assistance of counsel. To establish ineffective assistance, a defendant must show a deficient performance by counsel that was prejudicial to his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). When a conflict of interest on the part of the defense lawyer is alleged, we have held that Strickland is satisfied "when the representation of counsel is adversely affected by an actual conflict of interest." United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991) (following Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980)). Thus, to succeed on his Sixth Amendment claim, Patterson must show (1) that Hershner had an actual conflict of interest and (2) that the conflict adversely affected his performance in representing Patterson.

A lawyer has an "actual conflict" when he actively represents conflicting interests. See Sullivan, 446 U.S. at 350. We have said that when a lawyer is actively engaged in legal representation that requires him to account to two masters, "an actual conflict exists when it can be shown that he took action on behalf of one." Tatum, 943 F.2d at 376. Here, Patterson contends that Hershner's social, financial, and professional relationship with the prosecutor prompted Hershner to pursue production of the photographs less vigorously than a conflict-free advocate would have. Patterson alleges that Hershner believed that the photographs might benefit his defense, but refrained from pushing for their production to avoid "an embarrassing, and potentially career-ending situation for the prosecutor." Appellant's Br. at 20. This scenario, if true, would amount to an "actual conflict," we believe.

We need not decide, however, whether there was an actual conflict. We say this because even assuming an actual conflict, it did not have an adverse affect on Hershner's representation of Patterson. To demonstrate an adverse effect, Patterson must show that Hershner did not pursue some appropriate strategy or tactic because of his alleged con-

5

flict of interest. See, e.g., Perillo v. Johnson, 79 F.3d 441, 449 (5th Cir. 1996) (requiring a showing that "some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest"); Church v. Sullivan, 942 F.2d 1501, 1512 (10th Cir. 1991) (requiring a showing that "a specific and seemingly valid or genuine alternative strategy was available to defense counsel, but it was inherently in conflict with his duties to others").

Patterson argues that instead of denying the existence of the photographs, Hershner should have aggressively pursued their whereabouts because they would have shown Franklin "enjoying herself" in Patterson's company. At a minimum, he suggests, Hershner should have told the jury that the prosecutor lost or was withholding exculpatory evidence. These arguments have no support in the record. The magistrate judge's findings of fact, which the district judge adopted, reveal that the photographs depicted Franklin in a "drugged, dazed, or traumatized" condition and otherwise corroborate her account of Patterson's brutal and debasing acts. See Commonwealth v. Patterson, No. 96-7438, report and recommendation at 3 (E.D. Va. June 13, 1996). Hershner reviewed all of the photographs prior to trial and considered them to be mostly damaging to Patterson's defense. Detective House described at length the inculpatory nature of the photographs, saying that "Ms. Franklin looked dazed or stunned in all" of them. The detective mentioned, in particular, the photograph showing Patterson urinating on Franklin. Even if an isolated photograph or two did not expressly incriminate Patterson, we do not see how the photographs collectively would have been helpful to his case. As the magistrate judge concluded, "there was nothing exculpatory about the photographs." Id. at 3.

Hershner's strategic shift to argue that the photographs did not exist therefore appears to be the product of a reasonable belief that admitting the photographs would have been detrimental to Patterson's case. Again, as the magistrate judge found, "the record reflects nothing but a defense attorney doing his best with an awful case." Id. at 8. Patterson has not shown that Hershner failed to pursue an appropriate strategy in dropping his request for the photographs. Thus, even

6

assuming a conflict, it did not have any adverse effect on Hershner's representation of Patterson.**2**

We affirm the judgment denying Patterson's petition for a writ of habeas corpus.

<u>AFFIRMED</u>

_____

**2** We need not reach the Commonwealth's argument that Patterson waived any conflict of interest.

7