Revised June 2, 1999

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-40760

JAMES BEATHARD,

Petitioner-Appellant,

VERSUS

GARY JOHNSON, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

May 26, 1999

Before JONES, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

**I. MOTION FOR CERTIFICATE OF PROBABLE CAUSE**

Appellant-Petitioner James Beathard ("Beathard") seeks a

Certificate of Probable Cause[1] to appeal the district court's grant

---

[1]This case is governed by the standards for federal collateral
review of state court convictions that applied before the habeas
corpus statutes were amended by the Antiterrorism and Effective
Death Penalty Act of 1996 because Beathard's federal habeas corpus
petition was filed before the effective date of the act. *See Lindh*

1

of summary judgment in favor of Respondent Gary Johnson ("the State") in Beathard's federal writ of habeas corpus attacking his Texas capital murder conviction. We grant the Certificate of Probable Cause to Appeal. *See Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). Because both Beathard and the State have briefed and argued the merits of Beathard's appeal, we proceed directly to disposition of the appeal.

## II. FACTS AND PROCEDURAL HISTORY

On March 4, 1985, Beathard was convicted for the capital murder of Marcus Lee Hathorn in the course of burglary after a jury trial in the 258th Judicial District Court of Trinity County, Texas. The jury affirmatively answered the two special sentencing issues submitted pursuant to former TEX. CRIM. PROC. CODE ANN. § 37.071(b)(West 1984), and the state trial court assessed Beathard's punishment at death. The Texas Court of Criminal Appeals affirmed the conviction and sentence on direct appeal. *See Beathard v. State,* 767 S.W.2d 423 (Tex.Crim.App. 1989).

Beathard filed an application for writ of habeas corpus in state court, pursuant to TEX. CRIM. PROC. CODE ANN. § 11.07 (West 1984), which was denied by order dated May 26, 1993. On October 17, 1994, Beathard filed an application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. The district court granted summary judgment for the State, denying that application. We

---

*v. Murphy*, 521 U.S. 320 (1997).

2

affirm.

**A. Beathard's trial**

The following version of the facts was developed by the evidence, including co-defendant Gene Hathorn, Jr.'s ("Hathorn") testimony, at Beathard's trial.

Beathard became friends with his accomplice, Gene Hathorn, Jr., when they were employed as psychiatric security technicians at Rusk State Hospital in Rusk, Texas. In January 1984, Beathard left Rusk State Hospital and enrolled in classes at Stephen F. Austin University in Nacogdoches, Texas. Gene Hathorn, Jr. supplied Beathard, now unemployed, with small quantities of marijuana and cocaine to sell for a commission. During the spring and summer of 1984, they spent many evenings together, often discussing Gene Hathorn, Jr.'s desire to kill his father, stepmother, and half-brother.

Gene Hathorn, Sr., his wife, Linda Hathorn and son Marcus Hathorn lived in a trailer on eight acres in rural Trinity County, Texas. In 1983, Gene Hathorn, Sr. received a $150,000 settlement on an injury claim. Gene Hathorn, Jr. decided to kill his family out of animosity over a borrowed truck and because he believed he would inherit the settlement money. Gene Hathorn, Jr. described to Beathard his plan to commit "the perfect murder," which required an accomplice who could provide a false alibi. The plan included leaving clues to convince the police that the family had been

3

killed during a burglary by "a bunch of drug crazed niggers."

In July 1984, Gene Hathorn, Jr. offered to give Beathard a $12,500 share of the expected inheritance to help him murder his family.  Beathard agreed to do it because he needed the money to pay off a child support arrearage.

On October 9, 1984, Gene Hathorn, Jr. and Beathard left Rusk at 3:00 p.m. in a borrowed Dodge Colt.  Gene Hathorn, Jr. supplied three murder weapons, ammunition, gloves, some Negroid hairs gathered from a barber shop and some butts of cigarettes that had been "smoked by black people."  The two men went to the library at Stephen F. Austin University and stopped at other public places to create an alibi.  They then drove to a rural area to do some target practice with the sawed-off shotgun.

After nightfall, they arrived at Gene Hathorn, Sr.'s trailer house.  Gene Hathorn, Jr. fired the shotgun through a picture window, hitting Gene Hathorn, Sr. and Marcus Hathorn.  Beathard entered through the back door and shot all three victims with a pistol.  Gene Hathorn, Sr. was then shot in the head with a rifle.  They planted the Negroid hairs and cigarette butts at the crime scene and stole several items, including some guns, a video cassette recorder and the family's van.  The van was driven to a nearby African American community and abandoned.  The other stolen items and two of the murder weapons were dumped into a river.

Beathard returned to his girlfriend's house at approximately 12:30 a.m. on October 10, 1984.  Beathard was wearing overalls and

4

was visibly upset. Although law enforcement officers requested that Beathard produce the overalls several days later, they were never recovered.

Beathard testified at the guilt-innocence stage of his trial that he was present at the scene of the murders, but that he was tricked into being there and that he hid outside while Gene Hathorn, Jr. fired all of the shots.

**B. Gene Hathorn, Jr.'s trial**

Gene Hathorn, Jr. was separately tried, convicted and sentenced to death for murdering his father in the course of a burglary. Hathorn's testimony at Beathard's trial was read to the jury at his own trial and Hathorn repeated the identical story on the witness stand. Hathorn claimed that he only fired one shot at his father through the window and that Beathard repeatedly shot the three victims in the house, stole their property and planted the false clues to deceive the police. When Trinity County District Attorney Joe Price ("Price") cross-examined Hathorn at Hathorn's trial, he accused Hathorn of being the inside man while Beathard fired the shotgun through the window from outside the trailer.

**C. Beathard's Motion for New Trial**

Beathard filed an out-of-time motion for a new trial after Hathorn was convicted and sentenced to death, while his own direct appeal was pending. Hathorn testified at the evidentiary hearing on Beathard's motion for new trial that Beathard was not involved

5

in the murder of his family, giving a version of the facts that supported the version of events given by Beathard at Beathard's trial. The trial court denied Beathard's out-of-time motion for new trial from the bench without making any findings of fact or conclusions of law.

**D. State Habeas Proceeding**

Beathard filed a petition for habeas corpus in state court, setting out numerous claims for relief. On August 29, 1991, the trial court conducted an evidentiary hearing on Beathard's state habeas application, limited to Beathard's claims that his first attorney, Hulon Brown ("Brown"), had a conflict of interest that adversely affected his performance and that Price, the prosecutor, knowingly failed to correct Hathorn's false testimony at Beathard's trial. The trial court issued written findings of fact and conclusions of law, but made no recommendation to the Texas Court of Criminal Appeals concerning whether Beathard was entitled to habeas corpus relief.

The trial court found that Brown withdrew shortly after he became aware of the conflict of interest growing out of representing both Beathard and Hathorn. Concerning Hathorn's allegedly false testimony at Beathard's trial, the trial court found that Price took three different positions about the roles that Beathard and Hathorn played in the murders: 1) Price argued at Beathard's trial that Beathard "entered the trailer and killed the

6

family while Hathorn remained outside;" 2) Price argued at Hathorn's trial that Hathorn probably entered the trailer and killed his family while Beathard remained outside; and 3) at the state habeas hearing, Price took the position that Beathard fired one shot through the window at Hathorn's father with a shotgun and both men fired shots inside of the house. The trial court found that Beathard "probably was the person who fired the first shot from outside the trailer into the head of Gene Hathorn, Sr., with the shotgun."

The Texas Court of Criminal Appeals held that all of Beathard's claims for relief were without merit in a one page order. Two judges dissented without written opinion.

**E. Federal Habeas Proceeding**

The district court denied Beathard's requests for discovery and a federal evidentiary hearing and, finding no genuine issue of material fact, granted the State's motion for summary judgment. Beathard appealed.

### III. ISSUES PRESENTED

Beathard presents nine issues in his request for certificate of probable cause to appeal:

> 1. Whether a federal evidentiary hearing on Beathard's attorney conflict of interest claim is mandatory because the state courts did not resolve material questions of fact about the credibility of witnesses who testified at the state court hearing on that claim.
>
> 2. Whether Beathard is entitled to habeas relief on his attorney conflict of interest claim because the

7

prosecutor told the jury that his first lawyer was the same "crooked" attorney who intended to have him give perjured testimony in his co-indictee's fraudulent civil rights case.

3.   Whether a federal evidentiary hearing on Beathard's claim that the prosecutor knowingly used his co-indictee's false testimony about their roles in the murder is mandatory under the first *Townsend v. Sain,* 372 U.S. 293 (1963), circumstance because the state courts did not decide whether the prosecutor had knowledge of the lie.

4.   Whether a federal evidentiary hearing on Beathard's unexhausted *Brady v. Maryland*, 373 U.S. 83 (1963), claim is mandatory because the state courts did not resolve a credibility contest between his trial counsel and the district attorney about whether the exculpatory statement of a prosecution witness was suppressed.

5.   Whether a federal evidentiary hearing on Beathard's *Giglio v. United States*, 405 U.S. 150 (1972), claim is mandatory because the state courts did not resolve material questions of fact about the claim at the state court hearing.

6.   Whether Beathard is entitled to discovery on his *Giglio* claim.

7.   Whether the federal district court erroneously granted the State's motion for summary judgment of five of Beathard's claims without obtaining a relevant part of the state court record.

8.   Whether the trial court's refusal to instruct the jury that no adverse inference could be drawn from Beathard's decision not to testify at the punishment stage of his trial was not harmless.

9.   Whether the prosecutors urged the jury to draw an unconstitutional adverse inference from Beathard's decision not to testify at the punishment stage of his trial.

Beathard's seven substantive claims have been properly

exhausted.  At the direction of this court, the State filed a reply

8

brief focusing on Points of Error Three and Five.

## IV. DISCUSSION

## A. Attorney conflict of interest

### 1. Background and district court ruling

Beathard was arrested for the triple murder of the Hathorn family on November 3, 1984. Beathard retained attorney Hulon Brown on November 5, 1994. Brown had been representing Hathorn for several months in two separate criminal charges and a civil rights action against the local police department. Brown did not represent Hathorn in connection with the instant murder charges. Beathard was indicted ten days later, on November 15, 1985. Brown realized that Beathard and Hathorn had antagonistic positions and therefore ceased to represent Beathard when he was indicted. However, because he had never made a notice of appearance in the case, he never filed a motion to withdraw. Beathard then retained David Sorrels, who represented him throughout the remainder of the trial proceedings. Beathard asserts that Brown's representation of Hathorn in the unrelated matters created a conflict of interest which resulted in ineffective assistance of counsel during the ten days he represented Beathard and infected the entire trial.

A petitioner claiming ineffective assistance of counsel must demonstrate:

> first . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second,

9

> the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot be said that the conviction or death sentence resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 787 (1984). In some cases, prejudice in ineffective assistance of counsel claims is presumed. "One such circumstance is present when counsel is burdened by an actual conflict of interest." *Beets v. Collins*, 986 F.2d 1478, 1483 (5th Cir. 1993). However, in the context of these proceedings, when a claim of ineffective counsel in based on an alleged conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

The district court identified the proper legal inquiry, reviewed the proceedings of the evidentiary hearing held in state court and concluded: 1) Brown was not aware of a conflict of interest until Beathard was indicted for capital murder; 2) Brown became aware that Hathorn and Beathard had antagonistic positions only after Beathard gave several conflicting statements against Brown's advise, at which time Brown withdrew; 3) there is no evidence that Brown gave advice inconsistent with Beathard's best interests and Brown's representation of Beathard was not adversely affected by any conflict. Based on these conclusions, the district

10

court held that Brown's representation did not amount to ineffective assistance of counsel.

## 2. Denial of Federal Hearing

(Point of Error 1)

Beathard's first point of error urges this court to reverse the summary judgment entered in favor of the State because he was entitled to, but was denied, an evidentiary hearing in federal court on his ineffective assistance of counsel claim. We will reverse for a federal evidentiary hearing if we find 1) that Beathard has alleged facts that would entitle him to relief if they were true, *see Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996); 2) there is some basis in the record to conclude that such facts are disputed, *see Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); and 3) the merits of the factual dispute were not resolved in the state hearing. *See Townsend v. Sain*, 372 U.S. 293, 313 (1963)(the first *Townsend* situation in which a federal evidentiary hearing is mandatory).

Beathard contends that the state court, although presented with the question, did not decide when Brown became subjectively aware of his actual conflict of interest. The state habeas trial court found that "Brown withdrew from representing Mr. Beathard shortly after learning that there was a conflict." *Ex parte Beathard,* Writ. No. 22, 106-01, at 5-6 Texas Court of Criminal Appeals, May 3, 1993 (unpublished). Beathard contends that this

11

finding of fact is equivalent to no finding because it is too indefinite and that the state court should have found that Brown knew about the conflict on November 5, 1984, after his first meeting with Beathard. Further, Beathard argues that he is entitled to an evidentiary hearing to establish that Brown chose to forego certain defense strategies as a result of his conflict of interest, and to explore whether the prosecutor would have been receptive to a plea bargain during Brown's ten days of representation but for the fruits of Brown's conflict.

Beathard's claim fails because he has not asserted facts that, if established, entitle him to relief. *See Perillo*, 79 F.3d at 444. Assuming that Brown had an actual conflict of interest beginning on November 5, 1984, Beathard has not pleaded facts that meet the adverse effect prong of *Cuyler*. *See Cuyler*, 466 U.S. at 348. "[T]o show adverse effect, a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest." *See Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996). Beathard proposes in this appeal four defense strategies that were not pursued: 1) Brown failed to advise Beathard to try to make a deal to testify against Hathorn; 2) Brown did not stay in the room while District Attorney Price interrogated Beathard on November 5, 1984; 3) Brown did not adequately prepare Beathard to testify in the grand jury on November 14, 1984; and 4) Brown did not interview Hathorn about the

12

murders during his ten day representation of Beathard.

It is undisputed that, during the ten days between arrest and indictment, Brown gave sound advice to Beathard (do not talk to the law enforcement authorities, but if you choose to make a statement, tell the truth) which Beathard ignored.  It is also undisputed that Beathard told conflicting stories to Brown, to the police and to the grand jury during this time period.  Given the specific circumstances of Brown's representation, including Beathard's refusal to follow his counsel's advise, his lying, the short window of time Brown remained involved in Beathard's representation and the pre-indictment stage of the proceedings, we do not find that Beathard has demonstrated any plausible alternative defense strategy or tactics that might have been pursued, but were not, due to Brown's conflict of interest.  We therefore do not find it necessary to remand this case to district court for further evidentiary development.

**3. Guilt by association with Brown**

(Point of error 2)

Beathard, in his second point of error, contends he is entitled to habeas corpus relief even without an evidentiary hearing because Brown's conflict of interest left the jury with the impression that Beathard was guilty simply because of his association with Brown.  Evidence admitted during Beathard's trial established that Beathard was involved as a witness in the civil

13

case Brown had filed for Hathorn, that Hathorn believed Brown was "crooked" and "money hungry," and that Beathard met with Brown during the early stages of the capital murder prosecution.

It is well established that the government may not attempt to prove a defendant's guilt by showing that he associates with "unsavory characters." *See United States v. Singleterry*, 646 F.2d 1014, 1018 (5th Cir. Unit A June 1981)(finding plain error where the prosecutor asked the defendant whether he associated with felons). Guilt-by-association evidence is excludable because it lacks relevance or is unduly prejudicial. *See United States v. Polasek*, 162 F.3d 878, 884 n.2 (5th Cir. 1998). Normally, rulings concerning the admissibility of evidence are entrusted to the discretion of the trial court, *see id.* at 883, and such errors do not rise to the level of constitutional violations. Beathard does not attempt to argue that the evidence was inadmissible due to relevance or undue prejudice, but rather that he received ineffective assistance because the evidence raises the specter of guilt simply by his association with Brown. Beathard cites no authority, and we are aware of none, for the proposition that when the allegedly unsavory person with whom one associated is one's lawyer, that lawyer's assistance is per se constitutionally ineffective.[2] This contention is without merit.

---

[2]Beathard cites *Dawan v. Lockhart*, 31 F.3d 718 (8th Cir. 1994), to support his argument. In that case, Dawan's attorney also represented a co-defendant who implicated Dawan in a robbery and

14

**B. Prosecutor's Use of Co-indictee's False Testimony**

**1. Which man entered the trailer?**

(Point of Error 3)

Beathard urges this court to reverse the summary judgment for the state and remand for a federal evidentiary hearing on his claim that the prosecutor knowingly failed to correct Hathorn's false testimony at Beathard's trial. In his third point of error, Beathard alleges that his Fourteenth Amendment right to due process of law was violated when Hathorn testified that Beathard was the "inside man" during the murders and prosecutor Price not only failed to challenge him, but also argued this version of the facts to the jury in closing argument in spite of Price's personal belief that Beathard was the "outside man."

The record from Beathard's trial reveals that the jury heard Beathard's version of the facts (that he remained outside, while Hathorn went into the trailer) and Hathorn's version of the facts

---

then entered a plea bargain. That attorney continued to represent Dawan, offering the co-defendant's testimony (contradictory to his prior statement) to exonerate Dawan. The prosecutor cross-examined the co-defendant, vilifying the still-mutual attorney. The Eighth Circuit held that Dawan had shown actual conflict and adverse effect, sufficient under *Cuyler* to merit habeas relief on the basis of ineffective assistance of counsel. *Dawan* is factually and legally distinguishable from the present case. Beathard was only briefly associated with Brown, and Brown never represented Hathorn in this case. Further, the statements at issue had nothing to do with Brown's decisions in Beathard's case. Further, the Eighth Circuit's grant of relief was based on a classic conflict-and-adverse-effect analysis of the ineffective assistance of counsel claim rather than an "association-with-unsavory-characters" claim. For these reasons, we do not find it persuasive.

15

(that Hathorn shot through the window and Beathard entered the trailer.) Price presented essentially the same two versions of the facts at Hathorn's trial, with the exception that he cross-examined Hathorn concerning whether or not he entered the trailer, rather than presenting Beathard's live testimony to that effect. Hathorn denied it, and stuck to his story presented in Beathard's trial. Price's questions do not amount to evidence. Beathard emphasizes the fact that Price adopted one theory of the case in closing argument at Beathard's trial and a different theory in closing argument at Hathorn's trial. Again, closing arguments are not evidence. Moreover, a prosecutor can make inconsistent arguments at the separate trials of codefendants without violating the due process clause. *See Nichols v. Scott*, 69 F.3d 1255, 1274 (5th Cir. 1995). Beathard's due process claim is premised on the Fourteenth Amendment's prohibition against the knowing use of perjured testimony. *See Giglio v. United States*, 405 U.S. 150 (1972). The record does not support such a claim. Price had two live eyewitnesses to the crime, both charged with capital murder and both accusing the other of being the most culpable. Each jury heard both stories. Price, as well as every juror involved, knew that both of the stories could not have been true. Further development in a federal evidentiary hearing of who Price personally believed to be telling the truth will not establish a violation of Beathard's due process rights. In addition, Hathorn's

16

recantation of his earlier statements, made after both trials were completed, which is inconsistent with his own statements, with Beathard's versions of the events and with other evidence, does not raise a fact question requiring a federal evidentiary hearing on Beathard's due process claim.

**2. Had Hathorn been offered a deal in exchange for testimony?**

(Points of error 5 and 6)

Beathard's fifth and sixth points of error make the related arguments that he is entitled to discovery and to a federal evidentiary hearing to establish that the prosecutor allowed Hathorn to testify falsely that he had not been promised anything for his cooperation with the state. The prosecutor testified in the state habeas evidentiary hearing that there was no deal between Hathorn and the State. During the state habeas corpus hearing, Beathard offered the affidavit of Walter Shiver, a felon and former mental patient at Rusk State Hospital and friend of Hathorn, stating that, at the prosecution's direction, he had promised Hathorn that Hathorn would not be charged with capital murder if he testified at Beathard's trial.[3] The district court did not err in

---

[3]The state trial court initially sustained the state's hearsay objections to the affidavit, but noted that it would be included in the record forwarded to the Court of Criminal Appeals as Beathard's offer of proof. Later, the court indicated that it would admit the affidavit. However, in its final order, the court stated that it had sustained the state's objection to the Shiver affidavit.

denying a federal evidentiary hearing on the issue of Hathorn's putative deal with the prosecution when the only basis offered to establish a disputed fact question was an inadmissible affidavit.

## C.  *BRADY* CLAIM

(Point of error 4)

Beathard contends that he is entitled to a federal evidentiary hearing on his claim that Price failed to disclose two pieces of *Brady* material[4] which could have been used to create a reasonable doubt about whether his crime was a capital offense.  There is no dispute that, prior to either trial, Price had garnered statements from two individuals, Shiver and Larry Brown.

Shiver told Price that Hathorn called him on the day after the murders because he was looking for a place to hide from the police, and confided that he "got a piece of the gold" or "a piece of the money."  Shiver stated that he took this to mean that Hathorn stole money from his father's wallet after the murder.  Beathard asserts that Price did not disclose this statement prior to trial and that the defense might have used the statement to impeach Hathorn's testimony that he never entered the trailer or saw his father's wallet on the night of the murders and in obtaining further evidence that Hathorn was the inside man.  *See Giles v. State of Md.*, 386 U.S. 66, 74 (1967)("[T]he defense might have made

_____

[4]*See Brady v. Maryland,* 373 U.S. 83 (1963)(requiring disclosure to defendant of material in possession of the prosecution that is favorable to the defense and material to guilt or punishment).

18

effective use of the report at the trial or in obtaining further evidence. . . .")

Brown testified at Beathard's trial that Hathorn had attempted to recruit him as an accomplice in his plan to kill his family and that Hathorn planned "to shoot through windows and walls" without indicating who would do the shooting. Brown's pretrial statement to Price was more specific, stating that Hathorn had said, "all you have to do is walk up and shoot through the window," from which, according to Beathard's argument, a juror could have inferred that Hathorn planned for an accomplice to be the outside man.

The district court found this claim without merit on three separate bases: 1) the prosecution turned the statements over prior to trial; 2) even if they were not turned over, no habeas relief is warranted because the statements were not favorable to the accused; and 3) the statements were not material and would have had no effect on the results of the trial or the preparation or presentation of the defendant's case.

Beathard contends that he is entitled to a federal evidentiary hearing because the state court did not make a finding of fact concerning whether or not Price turned the two statements over to Beathard prior to trial. However, we conclude that because the statements were not favorable to Beathard and would have had no effect on the outcome of the trial, the district court did not err in finding this claim with merit. Beathard is therefore not entitled to remand for a federal evidentiary hearing concerning

19

whether the statements were turned over to Beathard prior to trial as Price testified at the state habeas evidentiary hearing.

## D. HATHORN'S TRIAL RECORD

(Point of Error 7)

Beathard complains that the district court rejected the factual allegations made in his federal habeas petition without reviewing the record of Hathorn's trial. Because of the importance of reviewing capital sentences on a complete record, *see Dobbs v. Zant*, 506 U.S. 357, 358 (1993), Beathard urges us to reverse the order for summary judgment and remand this case to the district court to reconsider in light of the relevant part of Hathorn's record. Beathard contends that his due process claim on suppression of *Brady* material and the conflicting positions taken by the prosecutor can only be evaluated after a detailed comparison of the Beathard's trial and Hathorn's trial. Even assuming the truth of the facts asserted (i.e. that Price did not turn over two witness statements and that Price argued in Hathorn trial a theory of the case inconsistent with the theory the State relied on in Beathard's trial), we have determined that there is no basis for reversing the district court's decision. We therefore find it unnecessary to remand this case to the district court for review of Hathorn's record.

## D. RIGHT AGAINST SELF INCRIMINATION

(Points of Error 8 and 9)

20

Beathard testified that he was innocent at the guilt phase of his trial and exercised his Fifth Amendment right not to take the stand at the punishment phase. Beathard argues that the penalty stage of his trial was tainted by a double violation of his right against self incrimination. The trial court declined, over Beathard's objection, to instruct the jury that no adverse inference could be drawn from his silence at the penalty stage. During closing arguments, the prosecution referred to Beathard's failure to demonstrate remorse or guilt and to his perjury during the guilt phase.

Upon request of a defendant, a trial court shall instruct jurors that they may not draw any adverse inference from a defendant's failure to testify at the guilt-innocence stage of trial. *See Carter v. Kentucky*, 450 U.S. 288 (1981). This rule also applies to the punishment phase if a defendant requests the instruction. *See United States v. Flores*, 63 F.3d 1342, 1376 (5th Cir. 1995). However, failure to give the instruction may be harmless error. *See id.* On direct appeal, the Texas Court of Criminal Appeals recognized that Beathard was entitled to a no adverse inference instruction at the punishment phase of his trial. *See Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). However, it found the error to be harmless under *Chapman v. California*, 386 U.S. 18 (1967). *See Beathard*, 767 S.W.2d at 433. Beathard argues here that the refusal to give the instruction was

a violation of his Fifth Amendment right against self-incrimination and was not harmless.

The district court concluded that Beathard could not demonstrate that he was in any way harmed by the failure of the trial court to issue a no adverse inference instruction during punishment. Given the fact that Beathard had testified at the guilt phase and the fact that the trial court instructed each juror individually prior to trial on Beathard's right not to testify, the district court held that the error in failing to give the instruction was harmless. We agree.

Finally, Beathard contends that the prosecutor's comments violated the Fifth Amendment prohibition against a prosecutor commenting either directly or indirectly on a defendant's decision not to testify at trial. *See Griffin v. California*, 380 U.S. 609 (1965). In determining if a comment made in closing argument is a comment on the defendant's decision not to testify, a court must determine if the prosecutor's intention was to comment on the defendants decision or was of such a character that it would be construed as such by the jury. *See United States v. Smith*, 890 F.2d 711, 717 (5th Cir. 1989). The comments made by the prosecutors do not show an intent to comment on defendant's failure to testify nor were they of such a character that they could be construed as such by the jury. The comments were directed at Beathard's various statements given prior to trial and to his

22

testimony at trial.  The comments could not reasonably be construed as comments upon Beathard's failure to testify during the punishment stage.  We therefore hold that Beathard's claim that his Fifth Amendment right to self incrimination was violated is without merit.

## V. CONCLUSION

Based on the foregoing, we grant Beathard's motion for certificate of probable cause to appeal and affirm the district court's grant of summary judgment for the State.

Certificate of probable cause to appeal GRANTED.  Summary judgment AFFIRMED.