IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0404-10






EMANUELL GLENN RANDOLPH, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


FORT BEND COUNTY





 Cochran, J., delivered the opinion of the Court in which Keller, P.J., and
Price, Johnson, Keasler and Hervey, JJ., joined. Meyers, J., filed a dissenting
opinion. Womack, J., concurred. Alcala, J., did not participate.


O P I N I O N 



 Appellant testified to an alibi defense at the guilt phase of his aggravated robbery trial
and then exercised his Fifth Amendment right not to testify at the punishment phase. In her
final punishment argument, the prosecutor stated that appellant was not worthy of probation
because he had not taken responsibility for the crime. The court of appeals, relying on
Swallow v. State, (1) found that the State's argument was an impermissible (and harmful)
comment on appellant's failure to testify at the punishment phase. (2) We granted the State's
petition for review to consider whether Swallow should be overruled and to "correct, clarify,
and brighten" the test for determining whether a prosecutor has impermissibly commented
on a defendant's failure to testify. (3) The State's punishment argument in this case, unlike that
in Swallow, explicitly referred to appellant's alibi testimony at the guilt phase and did not
mention any lack of remorse. We conclude that, by testifying that he was not the person who
committed this aggravated robbery, appellant expressly denied responsibility for the crime. 
The State was therefore entitled to comment on that denial of responsibility at either the guilt
or punishment stage. The State did not comment on appellant's failure to testify at the
punishment stage.

I.

 On February 10, 2007, Jose Ventura and his family went out to dinner. Jose's wife,
Cynthia, drove the family back to their Sugar Land home. As Cynthia pulled their car up the
driveway, Jose and his six-year-old son got out of the car to race to the back door, as they
always did. But before they made it, Jose heard a voice say, "Turn around." When he did,
he saw a strange man with a semi-automatic gun pointed at his face demanding money. The
man "was a tall black person, skinny, kind of slim." He was wearing a black, zip-up
sweatshirt. It was zipped up all the way, the hood was up over his head, and a bandana was
covering his face. Jose, who does not carry a wallet, pulled up his jacket to show the man
that he didn't have a wallet. He offered to get his wallet from his van, which was parked up
against the garage. He also asked the man to stop pointing the gun "because my boy is in the
back, behind me and I don't want him to get scared." At that point, the hooded man looked
"disappointed" and ran off. Cynthia, who was still in the car with the couple's baby
daughter, had witnessed the failed robbery. The Venturas called 911, and the police came
within five minutes. The Venturas gave police a description of the gunman, and forty-five
minutes later an officer spotted a man matching that description at a nearby Shell
station/Burger King. It was appellant, who, with a companion, was waiting for a triple
Whopper with cheese that he had ordered and paid for.

 Appellant never got his Whopper. He was frisked, handcuffed, and driven back to an
area near the Ventura home, where the Venturas separately identified him as the gunman. 
Both were confident in their identifications. A couple of hours later, Deputy Pickett's two
bloodhounds independently tracked appellant's scent from the Ventura's driveway to the
Shell station. One of the dogs, Clue, was let into the station, and he "lit up on that ATM
machine." Surveillance video showed appellant standing at the Shell station ATM before he
placed his order at Burger King.

 Appellant testified during the guilt stage that he was home watching the NFL Pro
Bowl when the robbery occurred. He said that, when there were just a few minutes left in the
game, he and a friend decided to walk to the Burger King. They left around 8:00 p.m. for
the approximately thirty-minute walk. They went into the Shell station/Burger King and tried
to use the ATM, but the debit card appellant had gotten from FEMA after Hurricane Katrina
would not let him get cash. He used the card to pay for his Burger King order and was
waiting for his food when the officer approached him. Appellant denied that he had ever
been near Jose Ventura's home or that he had ever pulled a gun on him: "I've never even
owned a gun in my life and no I didn't pull no gun on him." 

 The jury found appellant guilty of aggravated robbery. Appellant did not testify during
the punishment phase. In its closing argument, the State told the jury appellant was not
worthy of probation because he had not taken responsibility for the crime. Defense counsel
objected that the prosecutor was commenting on appellant's failure to testify at the
punishment phase, but his objection was overruled:

Prosecutor: Well, you heard Mr. Randolph testify during the guilt/innocence portion of this
case and he completely refused to take responsibility for his actions.


Defense: Objection, Judge, this is a comment on the silence of Mr. Randolph.


Prosecutor: Judge, it's a comment on his alibi story that he gave that this jury did not
believe.


Judge: This was the statement that was made during the other phase of the trial. It is
allowed. You may continue.


Prosecutor: You heard from him, you heard his version and you dismissed it by finding
him guilty. He has not taken responsibility for this crime-


Defense: Objection, a comment on his silence in the punishment phase.


Prosecutor: Judge, he hasn't remained silent, he testified.


Judge: He testified, that's correct, and the jury heard the testimony and the jury can
draw whatever conclusion they wish. You may continue.


Prosecutor: As I said, probation is a privilege and not a right. Because of what you have
heard from the defendant during the guilt/innocence, he does not deserve
probation.


 The jury assessed a sentence of nine years in prison. 

 On appeal, the court of appeals held that the trial court properly overruled the
objection to the prosecutor's first reference to appellant's failure to take responsibility for his
actions because that comment was directly tied to appellant's alibi defense at the guilt stage. (4) 
However, the court then held that, under Swallow v. State, the prosecutor's next statement
was objectionable because it alluded, in part, to appellant's failure to testify during the
punishment phase. (5) Finding the error harmful under Harris v. State, (6) the court reversed for
a new punishment hearing. (7)II.

 A comment on a defendant's failure to testify violates both the state and federal
constitutions as well as Texas statutory law. (8) The defendant has a separate Fifth Amendment
privilege not to testify at either the guilt or punishment phases of trial. A waiver of the
privilege at the guilt phase does not waive the privilege for the punishment phase. (9) Thus, a
comment on the defendant's silence at the punishment phase is improper even if the
defendant testified at the first phase of trial. 

 In assessing whether the defendant's Fifth Amendment right has been violated, courts 
must view the State's argument from the jury's standpoint and resolve any ambiguities in the
language in favor of it being a permissible argument. (10) Thus, the implication that the State
referred to the defendant's failure to testify must be a clear and necessary one. (11) If the
language might reasonably be construed as merely an implied or indirect allusion, there is no
violation. (12) As the Fifth Circuit has stated, "We cannot find that the prosecutor manifestly
intended to comment on the defendants' failure to testify, if some other explanation for his
remark is equally plausible." (13) The test, then, is whether the language used was manifestly
intended or was of such a character that the jury would necessarily and naturally take it as
a comment on the defendant's failure to testify. (14) In applying this standard, the context in
which the comment was made must be analyzed to determine whether the language used was
of such character. (15) 

 Prosecutors often argue at the punishment phase of trial that a defendant is not
deserving of leniency or a probated sentence because he has not taken responsibility for his
actions, shown remorse, or both. In a case in which the defendant does not testify either type
of statement could constitute an impermissible comment on the failure to testify. (16) 

 But remorse and responsibility are two entirely different concepts. "Remorse" means
"a deep, torturing sense of guilt felt for one's actions; the keen pain or anguish excited by a
sense of guilt; compunction of conscience for an evil act committed; self-reproach." (17)
"Responsible" means "answerable or accountable as being the cause, agent, or source of
something," (18) such as being the agent or cause of a crime. Remorse is the feeling of sorrow
or self-reproach, accompanied by guilt, while responsibility is the act of accepting
accountability. One who does not accept responsibility would not, under normal
circumstances, express remorse. But one can accept responsibility without expressing
remorse (e.g., "I am responsible for Dan's death, but I shot him in self-defense," or "the dead
dude deserved it"). One can accept responsibility by pleading guilty. Thus, the defense may
fairly argue, during punishment, that the defendant has accepted responsibility by pleading
guilty.

 Conversely, a defendant may expressly deny responsibility by putting on an alibi
defense or asserting that the result was an accident. Thus, the prosecution may fairly argue,
during the guilt or punishment stage, that the defendant denied responsibility because he
testified to an alibi or he claimed that the deceased died as the result of an accident. Simply
pleading not guilty and demanding that the State prove its case neither accepts nor denies
responsibility. Thus, the State could not argue, at either the guilt or punishment stage, that
the defendant denied responsibility for the crime simply because he pled not guilty. That
would be an impermissible comment on the failure to testify. Similarly, a comment on the
defendant's failure to show remorse is generally not proper if the defendant testifies at the
guilt stage and presents some defense, but does not testify at the punishment phase. (19)

 On the other hand, comments about the failure to testify are permissible if they are a
"fair response" to the defendant's claims or assertions. In United States v. Robinson, (20) the
Supreme Court approved the prosecutor's argument-"[the defendant] could have taken the
stand and explained it to you, anything he wanted to. The United States of America has given
him, throughout, the opportunity to explain,"-because it was in response to the defense
closing argument that the government had not allowed the defendant to tell his side of the
story. (21) 

 Likewise, if evidence in the record supports the prosecutor's remarks, there is no
error. (22) As we recently held in Snowden v. State, (23) the prosecutor's argument- "[the
defendant] doesn't give two hoots about the mother of his baby or his baby because he looks
her in the eye and punches her in her 38 week old stomach without remorse"-was supported
by the record evidence that the defendant intentionally punched his pregnant girlfriend in the
stomach. (24) However, we held that the prosecutor's next phrase - "[without remorse] just like
he is today"- improperly commented on the defendant's failure to testify about his present
lack of remorse during the trial itself. (25) This was a prohibited comment because it
accentuated for the jury the defendant's "failure to take the stand and claim present
remorse." (26)

 But a punishment-stage remark on the defendant's failure to accept responsibility may
be fair game if the defendant, in his guilt-stage testimony, denied responsibility for his
actions or for the crime. (27) As federal courts have held, the prosecutor may comment upon
the testimony actually given during the guilt stage and that is not construed as a comment on
the defendant's choice to remain silent during the punishment stage. (28) With these principles
in mind, we turn to the present case.

III.

 The court of appeals, in this case, stated that the prosecutor's second comment
concerning appellant's failure to take responsibility "is no different than the comment
confronted by the court in Swallow." (29) We disagree.

 In Swallow, a DWI case, we held that a punishment argument that probation should
be reserved for someone "who was remorseful for their actions . . . who admits error," was
an improper comment on silence at the punishment phase even though the defendant had
testified at the guilt phase that his medication was a "causative factor" for his DWI arrest.

 By pointing out that the "average" punishment for DWI should be
meted out to one who, inter alia, expresses remorse and admits his guilt, [the
prosecutor] necessarily invited the jury to contrast [the defendant]'s failure in
these regards. These remarks thus necessarily referred to his lack of remorse
and failure to acknowledge his crime during his testimony at the guilt phase of
trial. However, they just as necessarily called the jury's attention to the fact
that, once it had rejected his testimony at the guilt phase, [the defendant] failed
to take the stand at punishment and provide that testimony which would have
been antithetical to his posture at the guilt stage, viz: that he was in fact guilty
and was sorry for what he had done. Thus, while it clearly alluded to his
testimony at guilt, the prosecutor's comment just as clearly alluded to his lack
of testimony at punishment. It is not an either/or situation. The comment
necessarily alluded to both. To the extent it alluded to the latter, it was error. (30) 

 The court of appeals in the present case stated, "Because no testimony existed
concerning appellant's lack of remorse, the State's comment that '[Appellant] has not taken
responsibility for this crime,' necessarily is a comment on the defendant's failure to testify
during the punishment phase." (31) But in this case the prosecutor said nothing about remorse
or lack of remorse. She spoke only of "responsibility for this crime"- responsibility that
appellant explicitly denied during his testimony. This Court, in Swallow, inadvertently
combined the apples of "remorse" (which is generally expressed only after accepting
responsibility) with the oranges of "responsibility," and the court of appeals in this case
simply followed down that orchard path. We overrule Swallow to the extent that it conflated
the two distinct concepts of responsibility and remorse and implied that, even when a
defendant testifies at the guilt stage and expressly denies responsibility for the criminal
offense, the prosecutor cannot comment on that trial testimony during the punishment phase. 
The prosecutor may comment on any testimony given by the defendant in the guilt stage, and,
if the defendant expressly or impliedly denies criminal responsibility during that testimony,
the prosecutor may comment on that denial.

 The State asks us to overrule Swallow in its entirety, but that is not necessary in this
case, as there is a more narrow ground available. (32) The prosecutor's comment in Swallow,
regarding "admitting error," did not necessarily allude to a failure to testify at the punishment
phase. As the Swallow court noted, it could just as naturally have referred to the defendant's
guilt-phase testimony. But we declined to give the benefit of this ambiguity to the State
because the prosecutor also commented about the defendant's failure to express remorse and
that comment necessarily referred to his failure to testify at the punishment phase. 

 This case is different. Here the prosecutor spoke only of appellant's refusal to take
responsibility. There was no mention of remorse. The prosecutor could certainly comment
on appellant's failure to take responsibility during closing argument at either the guilt or
punishment phase because the evidence is there: Appellant testified to an alibi defense,
which is an express denial of criminal responsibility. We agree with the State that the
argument-"He has not taken responsibility for this crime"-was a permissible summation of
the evidence concerning appellant's alibi testimony. (33) That is what the prosecutor argued to
the jury. (34) That is how the prosecutor justified the argument to the trial court. (35) And that is
explicitly why the trial court allowed it. (36) Within the context of the prosecutor's full
argument, it "was reasonable and proper for the prosecutor to comment" on the evidence
admitted at the guilt stage of the trial. (37) Even if the comment could be construed as alluding
to appellant's failure to testify and take responsibility at the punishment stage, it was not a
direct and necessary comment on appellant's right to silence because there is an "equally
plausible" alternate explanation-the explanation that both the trial judge and prosecutor
gave-that the prosecutor was referring to appellant's alibi testimony. (38) In sum, the trial judge
did not err in overruling appellant's objections to the prosecutor's argument. (39)

 Finding this case distinguishable from Swallow, we decline the State's invitation to
overrule Swallow. We reverse the judgment of the court of appeals and remand the case to

 that court to address appellant's remaining points of error.

Delivered: November 23, 2011

Publish
1. 829 S.W.2d 223 (Tex. Crim. App. 1992). 
2. Randolph v. State, No. 01-08-00453-CR, 2009 WL 4436333 (Tex. App.-- Houston [1st
Dist.] Dec. 3, 2009) (not designated for publication).
3. Three of the State's four grounds for review requested that we overrule Swallow for
various reasons. The fourth ground requested that we overrule the harm-analysis factors set out
in Harris v. State, 790 S.W.2d 568 (Tex. Crim. App. 1989).
4. Randolph, 2009 WL 4436333, *6 ("In the instant case, the prosecutor's first comment
related to the guilt-innocence portion of the trial and was not a comment on appellant's failure to
testify.").
5. Id. ("However, the prosecutor's second comment that, '[y]ou heard from him, you heard
his version and you dismissed it by finding him guilty. He has not taken responsibility for this
crime,' is no different than the comment confronted by the court in Swallow.").
6. 790 S.W.2d 568 (Tex. Crim. App. 1989).
7. 2009 WL 4436333, *6.
8. U.S. Const. amend. V; see Griffin v. California, 380 U.S. 609, 615 (1965) ("the Fifth
Amendment, in its direct application to the Federal Government, and in its bearing on the States
by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the
accused's silence or instructions by the court that such silence is evidence of guilt"); Tex.
Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08.
9. Wilkens v. State, 847 S.W.2d 547, 553 (Tex. Crim. App. 1992).
10. 43 George E. Dix and John M. Schmolesky, Texas Practice: Criminal Practice
and Procedure § 45:21, at 1097 (3d ed. 2011).
11. Bustamante v. State, 48 S.W.3d 761, 767 (Tex. Crim. App. 2001).
12. Busby v. State, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008).
13. United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir. 1977).
14. Bustamante, 48 S.W.3d at 765 (collecting cases).
15. Id. The federal courts use the same standard. See e.g., United States v. Bohuchot, 625
F.3d 892, 901 (5th Cir. 2010).
16. See generally Dix & Schmolesky, supra, note 10, § 45.25.
17. Webster's New Twentieth Century Dictionary Unabridged 1529 (2nd ed.
1983). A secondary meaning of "remorse" is "sympathetic sorrow; pity; compassion," but that
meaning is rarely intended in criminal trials which involve legal responsibility for a crime.
18. Id. at 1543.
19. As Professors Dix and Schmolesky have pointed out

 If the defendant testified at the guilt/innocence stage and advanced a defense to
the charges but did not testify at penalty, the prosecutor cannot argue that the
defendant did not show remorse. The only appropriate occasion for a showing of
remorse would be at penalty, and defendant chose not to testify then.

Dix & Schmolesky, supra note 10, § 45:25, at 1105. See Owen v. State, 656 S.W.2d 458,
459-60 (Tex. Crim. App. 1983) (rejecting State's argument that it was not error for the
prosecutor to comment on defendant's failure to express remorse or sorrow since defendant did
in fact testify at the guilt phase of trial in support of his defensive theory of self-defense;
"Acceptance of the State's argument would place an accused in the paradoxical position of
saying I am sorry for a crime of which I am not guilty. The end result would be to deny the
accused the right to enter a plea of not guilty and make application for a probated sentence.").
20. 485 U.S. 25 (1988).
21. Robinson, 485 U.S. at 28-32 ("Where the prosecutor on his own initiative asks the jury
to draw an adverse inference from a defendant's silence, Griffin holds that the privilege against
compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to
the defendant's opportunity to testify is a fair response to a claim made by defendant or his
counsel, we think there is no violation of the privilege."); see also Nethery v. State, 692 S.W.2d
686, 703 (Tex. Crim. App. 1985) (prosecutor's response was invited by defense counsel's
argument regarding motive); Coleman v. State, 643 S.W.2d 947, 952 (Tex. Crim. App. 1982)
(defense argument invited prosecutor's response).
22. Davis v. State, 782 S.W.2d 211, 222-23 (Tex. Crim. App. 1989) (prosecutor's
arguments about the defendant's lack of remorse, including-"And after he got in there and the
Judge told him his warnings, first of all he asked the Judge for a comb. A cold-hearted killer. He
doesn't care. Then he's posing for the cameras when he gets out there. . . . He's smiling, and
he's clowning for the cameras,"-were supported by evidence in the record.); Fearance v. State,
771 S.W.2d 486, 514 (Tex. Crim. App. 1988) (Prosecutor's argument-"Listen to the samples of
what the doctor said about this type of person: Repeated conflict with society; fits him like a
glove. No guilt, no remorse; fits him like a glove,"-summarized the evidence presented by an
expert witness during the penalty stage of the trial.").
23. Snowden v. State, No. PD-1524-10, ___ S.W.3d ___, 2011 WL 4467280 (Tex. Crim.
App. Sept. 28, 2011).
24. Id. at ___.
25. Id. at ___.
26. Id.
27. See Smith v. State, No. 03-07-00392-CR, 2009 WL 2058915, *11 (Tex. App.--Austin,
July 14, 2009, pet. ref'd) (not designated for publication) (Prosecutor's argument- "But as you
heard him testify the other day, he certainly doesn't want sex offender treatment and he certainly
doesn't think he needs sex offender treatment. Based on what you hear from him when he
testified on guilt/innocence, he has not learned his lesson. He doesn't believe that he has done
anything wrong, and he is-I think the evidence-it's a reasonable deduction from the evidence
that he is never going to admit this,"-referred to Smith's testimony at the guilt phase of trial, not
to his failure to testify at the punishment phase.); Dennis v. State, No. 08-02-00044-CR, 2004
WL 2630218, *4 (Tex. App.- El Paso Nov. 18, 2004, no pet.) (not designated for publication)
(because defendant testified at guilt stage and denied participation in murder, prosecutor's
punishment argument "that in order to be salvageable one would have to admit responsibility for
one's acts" was not a comment on defendant's failure to testify at the punishment phase of trial).
28. See Hough v. Anderson, 272 F.3d 878, 902 (7th Cir. 2001) ("In closing argument, the
prosecutor commented upon the testimony actually given, not Mr. Hough's choice to remain
silent."); Beathard v. Johnson, 177 F.3d 340, 350-51 (5th Cir. 1999) ("The comments made by
the prosecutors do not show an intent to comment on defendant's failure to testify nor were they
of such a character that they could be construed as such by the jury. The comments were directed
at Beathard's various statements given prior to trial and to his testimony at trial. The comments
could not reasonably be construed as comments upon Beathard's failure to testify during the
punishment stage.").
29. Randolph, 2009 WL 4436333, *3.
30. Swallow v. State, 829 S.W.2d 223, 225-26 (Tex. Crim. App. 1992). See also Sauceda v.
State, 859 S.W.2d 469, 473, 475 (Tex. App.--Dallas 1993, pet. ref'd) (State's punishment
argument-"Did he once express any sorrow to you for what he had done? Did he say, I knew it
was terrible. I should not have been doing it?"-clearly alluded to both the defendant's testimony
during the guilt/innocence phase and to his failure to testify during the punishment phase;
comment was reversible error under Swallow); Searcy v. State, No. 03-96-00314-CR, 1997 WL
689010, *1-3 (Tex. App.--Austin Nov. 6, 1997, no pet.) (not designated for publication)
(Swallow compels conclusion that the prosecutor's punishment argument-"He's not remorseful.
We haven't heard him say: I'm sorry for the pain that my daughter is going through. I'm sorry
that's she's so upset. We haven't heard that from him,"-necessarily referred to both the past
testimony and the continuing failure to testify during the punishment phase).
31. Randolph, 2009 WL 4436333, *4.
32. See Watts v. State, 99 S.W.3d 604, 615 (Tex. Crim. App. 2003) (Keasler, J.,
concurring) (stating that "appellate courts should strive for prudence. . . . 'Prudence counsels
judges not to reach out and decide large, controversial issues in the absence of a necessity to do
so. The prudent jurist will typically decide cases on the narrowest, surest ground available,
leaving tougher calls, with broader implications, for future cases that squarely present them.'")
(quoting Hon. Bruce M. Selya, Essay: Thoughts from the Bench: The Confidence Game: Public
Perceptions of the Judiciary, 30 New Eng. L.Rev. 909, 916 (1996)).
33. Permissible jury argument includes summation of the evidence, reasonable deduction
from the evidence, answer to argument of opposing counsel, and plea for law enforcement.
Allridge v. State, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). 
34. The prosecutor stated,

 [Y]ou heard Mr. Randolph testify during the guilt/innocence portion of this case
and he completely refused to take responsibility for his actions . . . . You heard
from him, you heard his version and you dismissed it by finding him guilty. He
has not taken responsibility for this crime- . . . . Because of what you have heard
from the defendant during the guilt/innocence, he does not deserve probation. 
35. The prosecutor explained his comment to the Judge as follows: "Judge, it's a comment
on his alibi story that he gave that this jury did not believe . . . Judge, he hasn't remained silent,
he testified."
36. In overruling the defense objection, the trial judge said, "This was the statement that
was made during the other phase of the trial. It is allowed. You may continue . . . . He testified,
that's correct, and the jury heard the testimony and the jury can draw whatever conclusion they
wish. You may continue."

 There can be no doubt that the judge clearly understood the prosecutor's argument to be a
reference to appellant's alibi testimony during the guilt stage.
37. Busby v. State, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008). In Busby, the following
arguments were alleged to be direct comments on the failure to testify:


 Now, on February the 20th, he again says, well, I still haven't told you the whole
story. And, folks, I submit to you that it's a pretty logical deduction that he still
hasn't told the whole story.

 . . . .

 Now, ladies and gentlemen, this business of Kitty made me do it, that is not a
defense, that is an excuse. It is high time that Mr. Busby took some responsibility
for his own conduct instead of blaming it on everybody else. . . .

 . . . 

 It's time he takes responsibility in these statements to the police. He doesn't do it.
He doesn't avail himself- 


Id. at 665. We held that "It was reasonable and proper for the prosecutor to comment on the
shifting nature of [the defendant]'s custodial statements that were admitted into evidence." Id. 
38. United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir. 1977) ("We cannot find that the
prosecutor manifestly intended to comment on the defendants' failure to testify, if some other
explanation for his remark is equally plausible.").
39. Because we find that the trial court ruled within her discretion, we do not reach the
State's ground four. However, we recently addressed, and limited, the Harris factors in Snowden
v. State, No. PD-1524-10, ___ S.W.3d ___, 2011 WL 4467280 (Tex. Crim. App. Sept. 28, 2011).